Frederick Lawrence WHITE, Jr.; Benjamin L. Staponski, Jr., Plaintiffs–Appellants,

and

Gwen G. Caranchini, Appellant,

v.

GENERAL MOTORS CORPORATION, INC., Defendant–Appellee.

Nos. 89–3159, 89–3182.

United States Court of Appeals, Tenth Circuit.

July 19, 1990.

Gwen G. Caranchini, Kansas City, Mo. (Linda Scott Skinner, Overland Park, Kan., with her on the briefs), for plaintiffs-appellants.

Paul Scott Kelly, Jr. (R. Kent Sellers with him on the brief) of Gage & Tucker, Kansas City, Mo., for defendant-appellee.

Before LOGAN, McWILLIAMS, and BRORBY, Circuit Judges.

LOGAN, Circuit Judge.

In a related appeal, ·*White v. General Motors Corp.*, 908 F.2d 669 (10th Cir.1990)

(*White I*), entered today we have affirmed the district court's grant of summary judgment in favor of General Motors Corporation (GM) on the merits of claims filed against it by former employees Frederick Lawrence White, Jr. and Benjamin L. Staponski, Jr. In the instant appeal White, Staponski and their attorneys [1] (hereinafter collectively "plaintiffs") challenge the district court's award of Fed.R.Civ.P. 11 sanctions against them, jointly and severally, in the amount of $172,382.19. *See White v. General Motors Corp.*, 126 F.R.D. 563 (D.Kan.1989).

Plaintiffs make essentially five arguments on appeal: (1) the district court erred in imposing sanctions because plaintiffs' conduct satisfied Rule 11 and their arguments were meritorious; (2) the district court's order imposing sanctions was insufficiently specific to allow meaningful appellate review; (3) the amount of sanctions imposed was excessive; (4) the district court erroneously denied plaintiffs a hearing on sanctions; and (5) the district court erred in refusing to grant plaintiffs' Fed.R.Civ.P. 60(b) motion to reconsider its summary judgment order in favor of GM.

All of the issues raised are subject to review under an abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp.*, — U.S. —, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990) (across the board abuse of discretion standard in Rule 11 cases); *Valmont Indus. Inc. v. Enresco, Inc.*, 446 F.2d 1193, 1195 (10th Cir.1971), *cert. denied*, 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972) (Rule 60(b) motion subject to abuse of discretion review standard).

I

The facts are more fully set out in *White I*, and we only briefly summarize here. White and Staponski were long-time GM employees terminated under GM's Special Incentive Separation Program (SISP).

---

**1.** The complaint and many other filings were cosigned by Linda Scott Skinner, who apparently served as local counsel in Kansas. The district court's order on sanctions directs they be paid by "plaintiffs and their attorneys." *White v. General Motors Corp.*, 126 F.R.D. 563, 567

(D.Kan.1989). The briefs on appeal, however, appear to treat Gwen G. Caranchini·as· the sole attorney subject to sanctions. Whether Skinner was intended to be held liable for sanctions is a matter to be clarified by the district court on remand.

They each received approximately $60,000 cash and other benefits under the separation program. They were in the age group protected by the Age Discrimination in Employment Act (ADEA). At the time of their termination, however, they each signed a release discharging GM from all claims "known or unknown" based upon their cessation of employment, including ADEA, the Civil Rights Act of 1964, and "any other federal, state, or local law, order, or regulation, or the common law relating to employment and any claims for breach of employment contract, either express or implied." I R. tab 10, exs. 2–A, 2–B. Allegedly White and Staponski thought they were among the GM employees singled out to be terminated because they had previously complained to management about defective brake work being done in their plant. White also thought that when he gave GM as an employment reference to Westlake Hardware, to which he was submitting a job application, GM reported that he was a "troublemaker." White and Staponski consulted lawyer Gwen G. Caranchini, and she filed suit on their behalf against GM.

An attorney's signature on the complaint or other pleading in a suit in federal court constitutes a certificate

> "that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

Fed.R.Civ.P. 11. If there is a violation the court can sanction the lawyer, the client, or both. *Id.* These sanctions may include payment of the other party's "reasonable expenses incurred because of the filing … including a reasonable attorney's fee." *Id.*

The portions of Rule 11 relevant to determining whether sanctions are justified in the instant case are its requirements of "reasonable inquiry" and "good faith argument" based on at least an extension of existing law, and its requirement that the filing was "not interposed for any improper purpose." *Id.*

The lawsuit plaintiffs filed made no ADEA claim. It was filed as a diversity case for wrongful discharge, breach of implied contract of employment, and slander under Kansas law. The original complaint made no mention of signed releases.

The district court found, as one basis for its award of sanctions, that although GM's lawyers advised attorney Caranchini of the releases, she never obtained copies before filing the complaint. 126 F.R.D. at 565. To Caranchini's allegation that she and her clients were unable to locate copies of the releases, the district court responded that a reasonable attorney would have waited to acquire them before filing suit, because there were no statute of limitations problems. *Id.*

On the slander count, the complaint did not name the GM employee who allegedly committed the slander, nor the Westlake employee who allegedly asked for the reference. GM attorneys acquired the Westlake employee's name, obtained the employee's affidavit that she did not call GM for a reference on White, and then asked Caranchini to dismiss the claim. This the attorney refused to do despite having no other evidence to contradict the Westlake employee's affidavit. This led the district court to conclude that plaintiffs conducted no investigation of the slander claim, thereby violating the "reasonable inquiry" requirement of Rule 11. *Id.* at 566.

The court also found that plaintiffs violated the Rule 11 requirement that claims advanced must be warranted at least by a "good faith argument for the extension, modification, or reversal of existing law," because plaintiffs' attorney insisted that "the court's application of the black letter law set out in Hastain[2] was in error," and "that whether a certain set of facts consti-

---

**2.** The reference here is to *Hastain v. Greenbaum,* 205 Kan. 475, 482, 470 P.2d 741, 746 (1970), in which the court held that whether facts as alleged by a party are sufficient to constitute duress is a question of law.

tutes duress is a question of fact for the jury." *Id.* The court also found plaintiffs' argument that the releases were ambiguous to be "specious." *Id.* The fraud and unconscionability claims were found to be without merit but were not used as a basis for Rule 11 sanctions. *Id.*

The court also found violation of Rule 11 because the action was advanced for an improper purpose and because plaintiffs needlessly increased the costs of litigation. Plaintiffs had made prefiling threats to contact the media and government agencies about the allegedly defective brake work being done at the plant if settlement demands were not met. As to this, the court stated the following:

> "In light of the fact that this court has found plaintiffs failed to make a reasonable inquiry into the facts in this case, and that plaintiffs pursued claims which were not warranted by existing law, the court finds that plaintiffs' threats to publicize those baseless claims and their subsequent filing of the lawsuit were improper and in violation of Rule 11."

*Id.* at 567. Additionally, the court found a Rule 11 violation in that "voluminous discovery requests" plaintiffs filed were unwarranted "since plaintiffs' claims were not well-founded in fact or in law." *Id.*

The court ordered "plaintiffs and their attorneys" to pay GM's costs and attorney's fees in defending the entire case, as well as in its pursuit of sanctions. *Id.* After GM filed an affidavit and exhibits detailing its expenses and attorney's fees incurred, the court rejected plaintiffs' motions to strike, for discovery, and for a hearing. It rejected plaintiffs' affidavits claiming that they were unable to pay any amount of sanctions, finding that they consisted of "bald assertions" that did not show what assets or income plaintiffs and their counsel had. III R. tab 145, at 2–3. It found the affidavit of GM's principal lawyer, which sought attorney's fees at an average hourly rate of $115.00, to be reasonable, and awarded all fees and expenses claimed, a total amount of $172,382.19. *Id.* at 3.

## II

### A. *Objective Standard*

As a preliminary matter, plaintiffs challenge the district court's imposition of sanctions on the ground that the court applied a subjective rather than objective standard in evaluating plaintiffs' conduct. This circuit has adopted the view that an attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions. *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir.1988). A good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances. *Id.* In addition, it is not sufficient for an offending attorney to allege that a competent attorney could have made a colorable claim based on the facts and law at issue; the offending attorney must actually present a colorable claim. *See Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1470 (2d Cir.1988) (focus on whether an objectively reasonable basis for claim "was demonstrated"), *rev'd in part on other grounds,* — U.S. —, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). Thus, plaintiffs may not shield their own incompetence by arguing that, while they failed to make a colorable argument, a competent attorney would have done so. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir.1987) (Rule 11 intended to prevent abuses arising from bad faith, negligence, and to some extent, professional incompetence).

The district court recited the correct standard in its review of plaintiffs' conduct. It stated that "the court should evaluate the parties' actions under an objective standard. The standard, then, is one of reasonableness under the circumstances." 126 F.R.D. at 565. We conclude that the district court applied the proper standard and that its conclusion that plaintiffs' actions in this case fell below that standard was not erroneous.

### B. *Specificity*

In its opinion, the district court failed to specify each of the "pleadings,

motions or other papers" for which it was imposing sanctions. *See* Fed.R.Civ.P. 11. Plaintiffs object to the lack of specificity. As noted, the court held plaintiffs responsible for all of GM's expenses and attorney's fees through its grant of summary judgment, thus apparently concluding that all of plaintiffs' actions were tainted by their failure to make reasonable inquiry or to make nonfrivolous arguments on the law, and by improper purpose. While the court's method of imposing sanctions was not optimal, neither was it an abuse of discretion. *See Lupo v. R. Rowland & Co.*, 857 F.2d 482, 485–86 (8th Cir.1988) (affirming district court award of sanctions based on "bulk of filings" and "conduct of litigation"), *cert. denied,* — U.S. ——, 109 S.Ct. 2101, 104 L.Ed.2d 662 (1989). The court's findings and conclusions, which we have extensively quoted, were detailed enough to "assist in appellate review ...[,] help assure the litigants ... that the decision was the product of thoughtful deliberation, and ... enhance[ ] the deterrent effect of the ruling." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 883 (5th Cir.1988) (en banc) (quoting Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 199 (1985)).

## III

We now turn to a review of the district court's particular findings.

*A. Slander Claim*

The district court properly granted summary judgment against plaintiff White on his claim that he was slandered by GM personnel when he gave GM as a prior work reference in a job interview at Westlake Hardware. Plaintiffs refused to dismiss this cause of action when confronted with an affidavit of the Westlake employee that she made no inquiry of GM, and plaintiffs had no evidence to contradict her affidavit. The court concluded that it was "inescapable" that plaintiffs' attorney "in fact conducted no investigation into whether anyone at Westlake Hardware had sought a reference from GM or whether any derogatory statements had been made concerning White." *Id.* at 566.

Under Kansas law a slander claim must set out in detail "the alleged words spoken or published, the names of those persons to whom they were spoken or published and the time and place of their publication." *Schulze v. Coykendall*, 218 Kan. 653, 545 P.2d 392, 397 (1976). Plaintiffs, when they filed their complaint, evidenced neither general knowledge of the elements of slander, nor knowledge of the specifics of the alleged slander in this case.[3] Failing to investigate the facts of a claim before filing a complaint is sanctionable and the district court did not abuse its discretion in so holding.[4] *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 41–44 (D.C.Cir.1990).

---

**3.** The affidavit of plaintiff White, filed in response to GM's motion for summary judgment, is informative on this issue. White's affidavit only states that he believed "some mention" in his conversation with Westlake Hardware personnel was made about him being a "troublemaker." II R. tab 44, Ex. A–47.

**4.** This is not, of course, a claim the details of which were uniquely and exclusively in the control of the defendant. Were that the case, we would not find plaintiffs' conduct sanctionable. *See Danik, Inc. v. Hartmarx Corp.*, 875 F.2d 890, 896 (D.C.Cir.1989), *aff'd in part, rev'd in part sub nom. Cooter & Gell v. Hartmarx Corp.,* — U.S. ——, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). In the instant case plaintiffs had access to Westlake Hardware personnel. Plaintiffs therefore should have ascertained the details of the allegedly slanderous communication before

filing suit. In their reply brief plaintiffs assert Westlake employees would not talk to White or White's counsel before or after the suit was filed. Reply Brief of Appellants at 3–4. Plaintiffs assert that Westlake's counsel denied a request to speak to Westlake personnel unless through a deposition, but they do not indicate whether this request was before or after litigation commenced. *Id.* at 4. Before the district court, however, they only stated that White "would obviously be assisted in helping defeat the [GM] motion for summary judgment if he could take the depositions of the various Westlake personnel referred to in his affidavit. Westlake will not agree to informal statements of its personnel, therefore depositions are necessary." I R. tab 34, at 18–19. In any event plaintiffs are not excused from meeting the pleading requirements of Kansas law.

### B. Claims of Wrongful Discharge and Breach of Contract

■ The district court held that plaintiffs' claims for wrongful discharge and breach of contract were sanctionable because plaintiffs had executed valid releases at the time of their termination. The court found that plaintiffs failed to reasonably inquire into the existence of the releases before filing suit in this case, that a reasonable inquiry would have revealed their existence, and that a reasonable attorney knowing of their existence would not have filed suit. ·

At least one circuit has held that failing to mention the existence of a release that could bar a claim is sanctionable under Rule 11. *See Blackwell v. Department of Offender Rehabilitation,* 807 F.2d 914 (11th Cir.1987). We agree that sanctions are appropriate in this case, not because plaintiffs failed to inquire into the facts of their claims, but because they failed to act reasonably given the results of their inquiries. In their pleadings, plaintiffs did occasionally question the existence or facial validity of the releases; however, they pleaded in the alternative that the releases were void. Thus, plaintiffs appear to have been aware of the releases, and the issue is whether they were justified in ignoring them. The argument that the releases were void was later held frivolous by the district court.

■ Part of a reasonable attorney's prefiling investigation must include determining whether any obvious affirmative defenses bar the case. Schwarzer, *Rule 11 Revisited,* 101 Harv.L.Rev. 1013, 1023–24 (1988). An attorney need not forbear to file her action if she has a colorable argument as to why an otherwise applicable affirmative defense is inapplicable in a given situation. For instance, an otherwise time-barred claim may be filed, with no mention of the statute of limitations if the attorney has a nonfrivolous argument that the limitation was tolled for part of the

period. The attorney's argument must be nonfrivolous, however; she runs the risk of sanctions if her only response to an affirmative defense is unreasonable. *See id.* (if failure to make prefiling investigation is sanctionable so too is failure to disclose adverse results of investigation).

The court rejected plaintiffs' arguments that they had executed the releases under duress and found their arguments regarding Kansas law on duress so poorly framed and so negligently made as to be sanctionable. We agree. Among the arguments made to the district court was that the Kansas Supreme Court case of *Hastain v. Greenbaum,* 205 Kan. 475, 470 P.2d 741 (1970), which is binding on this court, was distinguishable because the West Publishing Company classified it as a "Bills and Notes" case in formulating its Headnotes. III R. tab 125, at 17. The arguments that plaintiffs presented to the district. court were specious.[5]

The district court also sanctioned plaintiffs for alleging that the releases were void due to ambiguity. Plaintiffs point out that the exact duties of GM are not set out in the releases. But the releases clearly state that all present and future · claims, known and unknown, were released by White and Staponski. Further, plaintiffs failed to allege any real confusion caused by any ambiguities in the releases. There is no substantial disagreement between the parties on the terms of the contract.

■ As we have discussed in *White I,* there were arguments to set aside the releases that could have been made that would not have warranted sanctions. A reasonably competent attorney could have filed a colorable, nonfrivolous ADEA case against GM. Although it would be more difficult, a nonfrivolous common law whistleblowing claim also might have been brought. Thus, we have the tragedy of inept lawyers who failed to investigate their claims, and who compounded the court's and the defendant's problems in

---

5. Furthermore, plaintiffs argued, in opposition to GM's motion for summary judgment, that the question of duress could not be decided as a matter of law in this case, while arguing in their own motion for partial summary judgment that the facts were sufficiently settled to entitle them to a judgment as a matter of law.

dealing with the case by adopting an extremely aggressive approach. Rule 11 should not be used to discourage advocacy, including that which challenges existing law. Nevertheless, the court is entitled to expect a reasonable level of competence and care on the part of the attorneys who appear before it, and to expect that claims submitted for adjudication by those attorneys will have a rational basis. We cannot find the district court's decision to award sanctions an abuse of discretion.[6]

### C. *Improper Purpose*

■ The district court justified its decision to sanction the plaintiffs in part because of evidence of improper purpose, manifested by their threats against GM to utilize the media to create adverse publicity for GM and in their unwarranted discovery requests. In making this fact determination and in evaluating the improper purpose prohibition of Rule 11, it relied in part upon plaintiffs' failure to make reasonable inquiry and failure to make claims cognizable under the law. We cannot find the court's fact findings clearly erroneous or its decision to sanction an abuse of discretion.

### IV

Plaintiffs argue that the amount of sanctions chosen by the trial court was excessive because it exceeded the amount necessary to accomplish deterrence and because plaintiffs are absolutely incapable of paying such an amount. They urge that we vacate the sanction award and remand with directions. Although we express no view on the proper amount of sanctions, we agree that the award should be vacated and remanded for reconsideration in the light of the purposes and standards we set forth herein. In addition, we believe the trial court erred in not making specific findings on the degree of fault among the sanctioned plaintiffs to permit us to deter-

mine whether joint and several liability is justified.

### A. *Amount of Sanctions*

Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management. *See* American Bar Association, *Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure* (1988), *reprinted in,* 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* 212, 235–36 (Supp. 1989) (hereinafter *ABA Standards*). Deterrence is, however, the primary goal of the sanctions. *Cooter & Gell v. Hartmarx Corp.,* — U.S. —, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990) ("It is now clear that the central purpose of Rule 11 is to deter baseless filings in District Court and thus, ... streamline the administration and procedure of the federal courts."); *see also* Advisory Committee Note to Rule 11, 97 F.R.D. 198 (1983) (justifying amendments due to ineffectiveness of prior Rule 11 in "deterring abuses" and citing need to "discourage dilatory or abusive tactics"); *Gaiardo,* 835 F.2d at 483; *Thomas,* 836 F.2d at 881; *Eastway Constr. Corp. v. City of New York,* 637 F.Supp. 558, 564 (E.D.N.Y.1986) (citing cases), *modified,* 821 F.2d 121, (2d Cir.), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

■ Although the rule specifically allows the award of attorney's fees to the opposing party as an appropriate sanction, the award of fees "is but one of several methods of achieving the various goals of Rule 11." *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988). The rule's mention of attorney's fees does not create an entitlement to full compensation on the part of the opposing party every time a frivolous paper is filed. *See, e.g., Thomas,* 836 F.2d at 879 (noting that reasonable attorney's fees

---

**6.** Arguments presented by plaintiffs on appeal were clearer and more specific on the issue of economic duress. *See White I.* When we considered the appeal, we determined that while

not ultimately persuasive, the arguments on appeal did not merit sanctions. The record reflects that practice improved plaintiffs' ability to make the argument.

"does not necessarily mean actual expenses"); *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers,* 855 F.2d 1080, 1091 (3d Cir.1988) (same). Thus, although the monetary sanction imposed would normally be limited to the reasonable attorney's fees and expenses the opposing parties incur, the court must also consider other factors in arriving at "an appropriate sanction." Fed.R.Civ.P. 11. The appropriate sanction should be the least severe sanction adequate to deter and punish the plaintiff. *Doering,* 857 F.2d at 195–96; *Cabell v. Petty,* 810 F.2d 463, 466–67 (4th Cir.1987).

■ We believe that a district court must expressly consider at least the following circumstances when determining the monetary sanctions appropriate in a given case, all of which serve as limitations on the amount assessed:

■ 1. *Reasonableness (lodestar) calculation.* Because the sanction is generally to pay the opposing party's "reasonable expenses ... including a reasonable attorney's fee," Fed.R.Civ.P. 11, incurred because of the improper behavior, determination of this amount is the usual first step. The plain language of the rule requires that the court independently analyze the reasonableness of the requested fees and expenses. *Doering,* 857 F.2d at 195. The injured party has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims. *E.g., Napier,* 855 F.2d at 1092–94; *Thomas,* 836 F.2d at 878–81. In evaluating the reasonableness of the fee request, the district court should consider that the very frivolousness of the claim is what justifies the sanctions. Indeed, it is difficult to imagine how GM could have reasonably incurred $172,382.19 attorney's fees and expenses in ridding itself of this frivolous suit on summary judgment. We recognize that plaintiffs' attorneys followed "scorched earth tactics," and launched the kind of paper blizzard that we have condemned elsewhere, *see Glass v. Pfeffer,* 849

F.2d 1261, 1266 (10th Cir.1988). But the expenditure of 1263.88 attorneys' and 96.44 legal assistants' hours to defend this suit through summary judgment seems incredible. *See* III R. tab 135 ex. A.[7]

■ We note that 17.06 hours of attorney time is explicitly attributed to "Publicity/Media," which GM's principal lawyer declared "includes time spent responding to adverse publicity generated by plaintiffs," including client consultations and responding to media inquiries. *Id.* tab 135, Affid. of P.S. Kelly, Jr., at 10 & ex. A. Because Rule 11 limits sanctions to those arising out of an improperly filed "pleading, motion or other paper," the attorney's fees and costs should be only those that reasonably relate to actions taken through the court system. *See Cooter & Gell,* 110 S.Ct. at 2461 (limiting scope of Rule 11 sanctions to filings in district court); *Olivieri v. Thompson,* 803 F.2d 1265 (2d Cir. 1986); *Gaiardo,* 835 F.2d at 484 (Rule 11 sanctions only apply in situations involving attorney's signing paper). On remand we direct the district court to reexamine GM's fee request using standards similar to those we set out in *Ramos v. Lamm,* 713 F.2d 546, 553–55 (10th Cir.1983). However, we do not intend the examination of "reasonableness" to place any significant additional time burden upon the court or to require additional evidentiary hearings. *See infra* Part V.

■ 2. *Minimum to deter.* As we have already stated, the primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit. It is particularly inappropriate to use sanctions as a means of driving certain attorneys out of practice. Such decisions are properly made by those charged with handling attorney disbarment and are generally accompanied by specific due process provisions to protect the rights of the attorney in question. *Doering,* 857 F.2d at 196 & n. 4. We agree with the Third Circuit that the amount of sanctions

---

7. GM's brief itself notes that "the dispositive legal issues of release, duress, and slander are neither novel nor unsettled, and plaintiffs' claims ran afoul of hornbook law." Brief of Appellee at 23.

is appropriate only when it is the *"minimum* that will serve to *adequately* deter the undesirable behavior." *Id.* at 194 (quoting *Eastway,* 637 F.Supp. at 565) (emphasis in Circuit opinion); *see also* Note, *A Uniform Approach to Rule 11 Sanctions,* 97 Yale L.J. 901, 912–14 (1988) (stressing importance of optimal rather than maximum deterrence in the imposition of Rule 11 sanctions). Thus, the limit of any sanction award should be that amount reasonably necessary to deter the wrongdoer. *E.g., Doering,* 857 F.2d at 195–96.

3. *Ability to pay.* The offender's ability to pay must also be considered, not because it affects the egregiousness of the violation, but because the purpose of monetary sanctions is to deter attorney and litigant misconduct. *Thomas,* 836 F.2d at 881; *Doering,* 857 F.2d at 196. Because of their deterrent purpose, Rule 11 sanctions are analogous to punitive damages. It is hornbook law that the financial condition of the offender is an appropriate consideration in the determination of punitive damages. Annotation, *Excessiveness or Inadequacy of Punitive Damages Awarded in Personal Injury or Death Cases,* 35 A.L.R. 4th 441, 459–61 (1985) (citing cases); *cf. Cotner v. Hopkins,* 795 F.2d 900, 903 (10th Cir.1986) (considering financial status of offender in evaluating effect of fine imposed under Rule 11). Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status.

The district court attempted to consider the financial conditions of plaintiffs in making the award; plaintiffs submitted affidavits, however, stating that each would be forced into bankruptcy if the court imposed GM's requested attorney's fees "in whole or in part." We sympathize with the district court's frustration on receiving such a general and unhelpful statement of plaintiffs' ability to pay sanctions. Nevertheless, because we remand anyway, we urge the district court to allow plaintiffs to supplement the record in this regard on remand. *See Calloway,* 854 F.2d at 1478. We hold, however, that if the plaintiffs remain uncooperative on remand the court may ignore ability to pay in levying sanctions. We also hold that even if plaintiffs prove that they are totally impecunious the court may impose modest sanctions to deter future baseless filings.

4. *Other factors.* In addition, the court may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances. *See ABA Standards* at 236–37.

Because the trial court did not consider the issue of what amount was the least necessary to deter future misconduct, we vacate the award of sanctions and remand for further consideration.

### B. *Joint and Several Liability*

There is an obvious conflict of interest between White and Staponski, on the one hand, and their counsel, on the other, on the issue of who should be liable for the sanctions imposed by the district court. The matter was not raised in plaintiffs' briefs; this may have resulted, however, from the very conflict to which we refer. An attorney in the circumstances before us who argues that her clients were ignorant of any wrongdoing in the filing of the papers leading to sanctions essentially argues that she should bear sole liability for those sanctions. We therefore raise this joint and several liability issue sua sponte. *See Calloway,* 854 F.2d at 1473–76.

Sanctions must be appropriate in amount and levied upon the person responsible for the violation. *Chevron, U.S.A., Inc. v. Hand,* 763 F.2d 1184, 1187 (10th Cir.1985). We agree with those circuits that have expressed the view that the sanctioning of a party requires specific findings that the party was aware of the wrongdoing. *Calloway,* 854 F.2d at 1474–75; *Donaldson v. Clark,* 819 F.2d 1551,

1560 (11th Cir.1987) (en banc). In the instant case, the trial court appears to have assessed joint and several liability without considering relative fault. This concerns us particularly because this case is one in which at least a colorable ADEA argument could have been made to advance White and Staponski's position; however, no colorable argument was made in fact. The competence of counsel is, therefore, at issue. Excessive discovery requests, which were complained of in this case, also seem peculiarly the province of lawyers. Moreover, we cannot determine whether the court intended to impose liability upon both of plaintiffs' attorneys, or only upon Caranchini. *See supra* note 1. Therefore, on remand the court should make more specific findings regarding who bears the fault for the various actions warranting sanctions.

## V

Plaintiffs challenge the court's refusal to allow them a separate hearing on the issue of the amount of attorney's fees claimed by GM. The plaintiffs' motion was not a request for a hearing on the imposition of sanctions *vel non,* rather it was for a hearing on the *reasonableness* of the attorneys' fees requested by GM. III R. tab 141 at 5.

■ A party that is the target of a sanctions request has a due process right to "notice that such sanctions are being considered by the court and a subsequent opportunity to respond," before final judgment. *Braley v. Campbell,* 832 F.2d 1504, 1514 (10th Cir.1987) (en banc) (motion for sanctions for frivolous appeal). However, *Braley* clearly held that an opportunity to be heard does not require an oral or evidentiary hearing on the issue. The opportunity to fully brief the issue is sufficient to satisfy due process requirements. *Id.* at 1515. This rule has been adopted in most other circuits and comports with the cautions of the Advisory Committee Notes against generating satellite litigation on the issue of sanctions. Advisory Committee Note, 97 F.R.D. at 201. *See Donaldson,* 819 F.2d at 1560 n. 12 (citing cases permitting sanction decision without oral hearing).

■ We believe, however, that an adequate opportunity to respond to an attorney's fee request requires that the persons to be sanctioned be provided enough detail concerning the basis of the requested fees to permit an intelligent analysis. The affidavit upon which the court relied in this case was insufficient because, although it broke down the fees by total hours and rates per lawyer and by category, it did not permit plaintiffs to ascertain the reasonableness of GM's staffing decisions. III R. tab 135. For instance, we note that as many as three attorneys or others represented GM at particular depositions. This information may seem burdensome to provide, but absent a hearing in which cross-examination is possible, we do not see how plaintiffs could challenge the request except in general terms on the basis of the attorney fee information provided in the instant case. We hold, therefore, that a separate hearing is not necessary to accord plaintiffs due process, but on remand the court should insure that plaintiffs receive enough detail to respond intelligently in writing to the reasonableness of the requested fees.

## VI

■ Plaintiffs allege that the trial court erred in denying their motion "for remand" pursuant to Fed.R.Civ.P. 60(b). Despite plaintiffs' inaccurate labeling, their motion was clearly one to set aside the summary judgment because of new evidence. The court rejected plaintiffs' proffer of new evidence and denied their motion. We find no error in the court's decision.

The evidence presented by plaintiffs which they contend justifies vacating the summary judgment is a snippet of testimony by one of GM's attorneys, given in another case, in which the attorney characterized plaintiff White as "very upset over being forced to take the buy out." III R. tab 136, at 3. We agree with the district court that even if the given testimony reflects the attorney's view that plaintiff White acted under duress in accepting the

buyout, it is irrelevant because the attorney is not charged with the responsibility of determining whether the circumstances constituted duress. That is an issue of law, which the court resolved correctly in accordance with Kansas law. Thus, the new evidence does not merit modification of the summary judgment.

We AFFIRM the district court's denial of plaintiffs' Rule 60(b) motion and its determination that sanctions are proper in the instant case. We VACATE the particular award which the district court made and REMAND for further proceedings consistent with this opinion.