**BRIDGE PUBLICATIONS, INC.,**
a California non-profit
corporation, Plaintiffs,

v.

**F.A.C.T.NET, INC., a Colorado corpora-**
**tion; Lawrence Wollersheim, an individ-**
**ual; and Robert Penny, an individual,**
**Defendants.**

No. Civ.A. 95–K–2143.

United States District Court,
D. Colorado.

Nov. 4, 1998.

Todd P. Blakely, John R. Posthumus, Robert R. Brunelli, Sheridan Ross & McIntosh, P.C., Denver, CO, Jeffrey A. Chase, Lia Woodall, Jacobs Chase Frick, Kleinkopf & Kelly, LLC, Denver, CO, Samuel D. Rosen, Paul Hastings Janofsky & Walker, New York City, Elliot J. Abelson, Los Angeles, CA, for plaintiffs.

Clifford L. Beem, Stuart D. Mann, Beem & Mann, P.C., Denver, CO, Helena K. Kobrin, Moxin & Kobrin, Los Angeles, CA, Daniel A. Leipold, Leipold, Donohue & Shipe, Santa Ana, CA, for defendants.

## MEMORANDUM OPINION AND ORDER ON FURTHER PENDING MOTIONS

KANE, Senior District Judge.

Bridge Publications, Inc., a California nonprofit corporation ("BPI") sues Lawrence Wollersheim, Robert Penny and F.A.C.T.Net, Inc. ("FACTNET") for injunctive relief and damages for copyright infringement. Because this is an action for copyright infringement under 17 U.S.C. § 501, jurisdiction is based on 28 U.S.C. §§ 1331 and 1338(a),

Before me are BPI's Motion to Strike & In Limine Motion to Exclude, BPI's Motion for Summary Judgment against all Defendants, Penny's Cross-motion for Summary Judgment, and BPI's Motion for Sanctions under Rule 11. Oral argument on these motions was heard on Tuesday, October 6, 1998[1] at

---

1. Plaintiff's counsel presented oral argument on the Rule 11 motion, which the parties had fully briefed. Defendants' counsel stated they were unaware oral argument was scheduled on that

which time I struck BPI's Motion to Strike & In Limine Motion to Exclude, and severed any issues with respect to Defendant Penny. Any such issues, will be dealt with at a subsequent proceeding. I deny BPI's motions for summary judgment and for Rule 11 sanctions.

Also pending (and not orally argued) are Defendants FACTNET and Wollersheim's Motion to Amend Pretrial Order to Add a Witness, which I grant, and their Motion to Vacate Protective Order, which I deny. I appoint a special master under Fed.R.Civ.P. 53(b) and vacate the pretrial conference set for November 16, 1998 and trial date of January 4, 1999.

## I. *Background.*

BPI is one of numerous formal entities forming part of the corporate structure of the Church of Scientology ("Scientology") founded by L. Ron Hubbard. FACTNET is a non-profit educational and charitable corporation registered and with its principal place of business in Colorado. Wollersheim serves as President of the Board and Executive Director of FACTNET and Penny is a member of the FACTNET Board. Wollersheim and Penny are former Scientologists.

Wollersheim and Scientology have a long history of opposing each other in litigation. In 1980, Wollersheim filed tort claims against the Church of Scientology of California ("CSC") arising out of his dissatisfaction with counseling he had received. *See Wollersheim v. Church of Scientology,* 212 Cal. App.3d 872, 66 Cal.Rptr.2d 1 (Cal.Ct.App. 1989). The jury awarded Wollersheim a judgment of $30 million in damages, which was reduced. *Wollersheim v. Church of Scientology,* 6 Cal.Rptr.2d 532 (Cal.Ct.App. 1992). After numerous appeals and challenges, this judgment became final and collectible in March 1994. Wollersheim has not collected the judgment and, in May 1997, moved the California Superior Court to amend it to add Religious Technology Center ("RTC") and Church of Scientology International ("CSI") as judgment debtors. The Superior Court granted Wollersheim's motion in October 1997, finding that RTC and CSI were alter egos of CSC and had controlled the litigation in the CSC case. This matter is apparently on appeal to the Second District Court of Appeal of the State of California. According to Wollersheim's declaration his judgment in excess of six million dollars is outstanding.

FACTNET is a small non-profit corporation which maintains a library and archive information concerning, *inter alia,* an ongoing public controversy regarding Scientology's status as a religious tax exempt organization and charges that its practices involve psychological coercion which has resulted in mental and physical harm to a significant number of its adherents. Much of the information maintained by FACTNET is available to the public on FACTNET's Bulletin Board Service on the Internet.[2] Other data is stored in a private portion of the FACTNET library, which includes information concerning and provided by former Scientologists and their families.

In the instant case, BPI seeks a judgment of copyright infringement against FACTNET, Wollersheim and Penny. BPI alleges (1) it is the exclusive licensee of the copyrights in 1,914 copyrighted works authored by L. Ron Hubbard; (2) Defendants made unauthorized verbatim copies of these works in both hard copy and computer readable form (stored on hard drives, back-up tapes, floppy disks and CD–ROM's ("CD's")); and (3) Defendants offered for sale to the public, and in fact sold CD's containing computer readable copies of the vast majority of these works, all in violation of BPI's exclusive rights under 17 U.S.C. § 106.

BPI seeks entry of a permanent injunction prohibiting Defendants from any unauthorized reproduction, adaptation, distribution,

motion. I allowed Defendants ten days from the date of the hearing to respond further to the Rule 11 motion and Plaintiff an opportunity to reply thereafter. Defendants did not file any further response. On October 22, 1998, Plaintiff filed a Motion for Entry of an Order on Rule 11 Sanctions.

**2.** The Internet is an international computer network. A bulletin board service usually requires users to dial in through telephone lines to access specialized information or services.

publication, performance or display, including any so-called archiving, in any media, of the works of L. Ron Hubbard, including the 1,914 works identified by BPI. BPI also seeks all remedies under the Copyright Act, including statutory damages and attorney fees for Defendants' infringements, pursuant to 17 U.S.C. §§ 504(c) and 505, as well as impoundment and destruction of all infringing copies and the means for making such copies, pursuant to 17 U.S.C. § 503. Furthermore, BPI alleges Defendants' infringements were willful and that BPI is therefore entitled to enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2) in the amount of $100,000 per work.

Defendants deny BPI has valid copyrights to the works at issue and deny violating any alleged copyright. They maintain there are only 13 works at issue herein; and one or more Defendants may or may not have made copies of portions of those works; all the works copied were copied for scholarship, research and backup purposes against any ongoing and threatened attacks by Scientology, and fell within the doctrine of fair use; and Defendants did not publish any of the works, nor did they offer them for sale or sell any of the works in violation of BPI's licence. Defendants deny any copying of portions of the thirteen works was willful, asserting it was entirely privileged. They further deny BPI has any right to recovery herein and seek an award of attorney fees for the malicious prosecution of this action.

■ Defendants assert affirmative defenses of laches, collateral estoppel, res judicata, unclean hands, copyright misuse, unlawful enforcement of the alleged copyrights (claiming the writ of seizure allowing original Plaintiff RTC to search for documents was obtained unlawfully), public domain, fair use, and the library/archive exception of 17 U.S.C. § 108. Further defenses asserted are that BPI's claims are barred because it is not the actual owner of the alleged copyrights which were obtained by fraud, duress, undue influence or illegal procedures as well as statute of limitations, abuse of process, judicial fair use, set off, and release.[3] BPI asserts each of the affirmative defenses is insufficient in fact, law, or both and moves to strike them in the pending Rule 11 motion.[4]

## II. *BPI's Motion to Strike & In Limine Motion to Exclude Evidence.*

BPI moved to strike the declarations of Defendant Wollersheim, Defendants' expert witness Robert Vaughan Young and former Scientologists Jesse Prince, Dennis Erlich and Vicki Aznaran, all of which were submitted in support of Wollersheim's and FACT-NET's opposition to BPI's summary judgment motion. BPI asked that I strike these declarations and thus ignore them in deciding the pending Rule 56 motion and, in limine, to exclude these declarations at any further hearing or trial in this case. At the October 6, 1998 hearing, I commented on the acrimonious and unprofessional tone of the

---

3. In his May 11, 1998 ruling on Defendants' motion to amend the scheduling order, Magistrate Judge Abram denied Defendants' request to conduct discovery concerning the 1995 agreement which Defendants assert bars BPI from pursuing the claims in this action. The magistrate stated his denial was based on the facts that neither BPI nor Defendants were party to the agreement, and the agreement covered only claims which arose out of the California case.

4. Generally, an affirmative defense is deemed waived if it has not been raised in a responsive pleading or appropriate motion. *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir.1991). At the close of oral argument on BPI's motion for summary judgment, BPI submitted Plaintiff's Bench Memo on Defendants' Abandonment of Affirmative Defenses, arguing that Defendants have waived all affirmative defenses not asserted in response to the motion for summary judgment.

Counsel for BPI referred the court to *United Mine Workers of America Pension v. Pittston Co.*, 984 F.2d 469, 478 (D.C.Cir.1993) in support of its argument. As Defendants point out in their memorandum in response to the bench memo, the later case of *Daingerfield Island Protective Society v. Babbitt*, notes "[t]he defendant in *Pittston* apparently waived its defenses from the beginning, having never asserted them in any pleading or motion in the district court. Thus, the *Pittston* court simply found that waiver precluded the defendant from raising those defenses for the first time after summary judgment had been granted in the plaintiff's favor." 40 F.3d 442, 445 (D.C.Cir.1994). As in *Daingerfield*, Defendants adequately asserted all affirmative defenses in the Second Amended Answer as well as in opposition to BPI's motion for sanctions under Rule 11, filed November 7, 1997. Therefore, these defenses have not been abandoned.

briefs filed by both sides in relation to this motion and struck the briefs from the court record. In so doing, I denied BPI's Motion to Strike & In Limine Motion to Exclude Evidence.

### III. *FACTNET and Wollersheim's Motion to Amend Pretrial Order to Add a Witness*

Defendants FACTNET and Wollersheim move to amend the Joint Pretrial Order entered on January 29, 1998 to include Jesse Prince as a non-expert witness for Defendants. According to the Declaration of Daniel A. Leipold, attorney of record for Defendant Wollersheim, he was contacted by Prince in mid-July 1998. Prince was for many years a high ranking Scientology executive. According to his affidavit, he only came forward years after he left Scientology (of which he was a follower from 1976 to 1992) and after he had determined he could no longer be silent in the face of what he regards as fraud and deceit. Prince's declaration was submitted in support of Defendants' opposition to BPI's motion for summary judgment. Defendants made Prince available for deposition. He was deposed for approximately twenty-one-and-one-half hours.

BPI opposes the amendment on the grounds that Prince's testimony is irrelevant in that he does not in his affidavit identify particular works which he asserts had fallen into the public domain nor the factual basis for the purported concern expressed at an alleged 1983 meeting regarding such works. BPI maintains Prince recanted his declaration concerning the meeting during his deposition when he referred to three 1983 meetings and did not mention concern having been raised about materials in the public domain.

■ I disagree with BPI's characterization of Prince's deposition testimony as a recantation. Prince testified that during a meeting in 1983, after David Miscavige, then chairman of the Board of Scientology's Authors Services Inc. (ASI), had been alerted to the fact that Scientology did not have registrations for many of its copyrights, Patricia Brice (then personal secretary to Ron L. Hubbard and an employee of ASI) was summoned. According to Prince, Miscavige said to Brice: "Do you know that we don't have copyright registrations on all these materials? What are you going to do? Listen, its a big problem. Let's get a project going now to register everything, everything now, so that we are covered in this way." (Pl.'s Opp'n Defs.' Mot. to Amend Pretrial Order, Prince Depo. Tr., Ex. A at 1000:24 – 1001:5.) In response to the question as to whether he had told everything that was said at the meeting on the subject of copyrights, Prince testified: "Mr. Miscavige also said—and, in all honesty, I have to say this: He said that there was [sic] quite a few of the—from his information, quite a few—or there were big holes in copyright registrations. It wasn't like all of them—nothing was ever registered. He said there were just big holes in it; and if we got contested with this, it would be bad news, so we have to put together a project, paraphrase." (*Id.* at 1002:10 – 1002:18.)

BPI argues these remarks related only to the discussion that other Scientology-related entities (not BPI) could not sue a former Scientologist named David Mayo until certain unpublished works Mayo was using (not the published BPI works at issue here) were registered with the Copyright Office. Prince's testimony is, however, consistent with a broader interpretation. The issues raised by BPI may relate to Prince's credibility and the weight to be attached to his testimony but do not constitute reason to disallow his testimony *in toto*. I find Prince's testimony relevant, *inter alia,* to the core issue of the validity of BPI's copyrights.

■ BPI further argues Defendants did not diligently identify Prince as a witness and that it was not able to complete his deposition due to interference by Prince's personal counsel. It asks that if the motion to amend is granted, it be permitted to complete his deposition. Whether to allow amendment of the pretrial order is a matter in my discretion. *See Joseph Mfg. Co. v. Olympic Fire Corp.,* 986 F.2d 416, 418 (10th Cir.1993). Modification should be permitted "when the danger of surprise is small and a failure to amend might result in an injustice

to the moving party." 6A Charles A. Wright, et al., *Federal Practice and Procedure,* § 1527 at 287 (1990); *see also Hull v. Chevron U.S.A., Inc.,* 812 F.2d 584, 588 (10th Cir.1987). I exercise my discretion and allow the amendment of the pretrial order. I conclude Prince has already been extensively deposed and deny BPI's request to complete his deposition.

### IV. *BPI's Motion for Summary Judgment against all Defendants.*

BPI originally sought summary judgment against all Defendants. Since the filing of its motion, the Supreme Court has held that the issue of damages, including enhanced damages for willful infringement, is for the jury. *See Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 118 S.Ct. 1279, 1288, 140 L.Ed.2d 438 (1998). BPI now requests partial summary judgment on the issues of validity and infringement of BPI's copyrights, leaving for the jury only the questions of damages and willfulness. BPI asks, if there is a triable issue of fact with respect to validity of any of the works at issue, that partial summary judgment enter as to the validity and infringement of the remaining works at issue; alternatively, if any triable issue of fact exists as to liability, that an order of summary judgment enter as to the validity of BPI's copyrights.

■ To prevail in a copyright infringement action, a plaintiff must prove (1) ownership of a valid copyright and (2) copying by the defendant of "protected components of the copyrighted material." *Gates Rubber Co. v. Bando Chemical Indus., Ltd.,* 9 F.3d 823, 831 (10th Cir.1993). BPI asserts it is entitled to summary judgment on its copyright claim because Defendants have infringed its exclusive rights in 1,914 works through their wholesale, verbatim copying and commercial exploitation of BPI's copyrighted works. Defendants deny that BPI can satisfy either of the two requirements to succeed in this action. Further, they raise several affirmative defenses.

■ The Copyright Act of 1976 provides that, with respect to published works, a Copyright Office Certificate of registration obtained within five years of first publication "constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). A registration made more than five years after first publication of the work is still valid and subject to whatever weight the court, in its discretion, deems appropriate. *Religious Technology Center v. Netcom On–Line Communication Services, Inc.,* 923 F.Supp. 1231, 1242 (N.D.Cal.1995) (awarding the presumption of validity to copyrighted works registered more than five years after publication). The five-year rule does not apply to works registered under the 1909 Copyright Act, which had no such requirement.

■ Although a certificate of registration creates a rebuttable presumption of copyright validity, "[w]here other evidence in the record casts doubt on the question, validity will not be assumed," *Durham Industries Inc. v. Tomy Corp.,* 630 F.2d 905, 908 (2d Cir.1980). *See also Tempo Music, Inc. v. Famous Music Corporation,* 838 F.Supp. 162, 167 (S.D.N.Y.1993). A jury may ultimately reject challenges to copyright ownership that are not fully supported. That possibility, however, does not warrant summary judgment where evidence in the record raises a genuine issue as to any material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (stating district court judge is not permitted on summary judgment "to weigh the evidence and determine the truth of the matter;" his role is limited "to determin[ing] whether there is a genuine issue for trial").

■ Defendants dispute that the works at issue in this case are all copyrighted. They argue the evidence suggests that many of the works whose copyrights were allegedly infringed are brief excerpts from multi-volume compilations, some of the contents of which were placed in the public domain years before being collated into the subsequently copyrighted-and-registered works. Defendants also argue the number of alleged copyright violations is vastly overstated and the evidence calls into question BPI's assertion that all the works at issue have been validly registered with the Copyright Office. In sum, Defendants submit the evidence shows

significant factual disputes concerning authorship, publication, copyrightability, assignment and use of the works, precluding summary judgment.

Defendants assert many of the works at issue were published more than five years before their copyright registrations. *See* Affidavit of Prince and Declarations of Young and Leipold. Defendants maintain, with respect to works belatedly registered and to which the 1976 Act applies, BPI has the burden of proving the information in each registration is truthful and the copyright claimed for each work is valid.

Although a statutory presumption does not apply, I have discretion under the 1976 Act to afford the registrations the evidentiary weight I believe appropriate. 17 U.S.C. § 410(c). *See Religious Technology Center*, 923 F.Supp. at 1242 (evidence disputing accuracy of information contained on the registration favors a finding that little or no evidentiary weight should be given to those registrations). Defendants offer several reasons why the presumptions of validity of the copyright should not apply: (1) the significant time gap between the dates of creation and/or publication of the works and the filing of the applications to register copyrights raises substantial doubt as to whether any persons completing and signing the registration applications either remembered facts accurately or ever even had personal knowledge of the facts that were being presented to the Copyright Office; and (2) Norman Starkey, who signed many of the registration applications submitted in support of BPI's motion, has testified to having had no personal knowledge of the truth of statements made in the registrations but stated he relied on what others told him to be true when signing them. Under these circumstances, Defendants urge the applications cannot have any presumptive weight.

Defendants further submit credible evidence disputes the authorship of L. Ron Hubbard as to some or all of the works at issue, which authorship forms the basis of BPI's ownership claims. Young, who was for many years associated with Scientology's publication entities, states he has personal knowledge that material written and issued under the name of L. Ron Hubbard, was not in fact authored by Hubbard. (Young Decl. ¶ 29.) Young says he himself wrote material attributed to Hubbard, not on a work-for-hire basis or with Hubbard's knowledge or consent. (*Id.*) These assertions are significant as "[c]opyright in a work ... vests initially in the author or authors of the work." 17 U.S.C. § 201(a). Authorship by other individuals would mean the materials were never owned by Hubbard and any assignment from him or his estate to BPI would be invalid as to those works. Thus, Defendants maintain questions of fact exist as to the authorship of the works, notwithstanding claims made by the signor to the copyright registration applications that "the statements made by me in this application are correct to the best of my knowledge."

Further negating the evidentiary weight to be given to copyright registrations, according to Defendants, are registrations submitted several years after the date of initial publication which retroactively claim a deceased Hubbard wrote tens of thousands of pages of material (*see* Young Decl. ¶ 18); factual disputes regarding the initial publication dates for many of the works (*id.* ¶ 9); and disputes as to whether any of the works were protected by copyrights in the first place (Prince Aff. ¶¶ 34–36; Young Decl. ¶ 23).

In response, BPI argues Defendants have presented no evidence respecting the validity of the vast majority of the copyrights and that their challenges to certain works are either facially frivolous or refuted by materials in Defendants' possession. BPI maintains Defendants have failed to present any evidence to rebut the validity of BPI's copyrights in the works at issue, and states Defendants have identified only 44 works as not being registered within the five-year period. Thus, BPI maintains, the vast majority of the works are entitled to a presumption of valid copyright. With regard to the remaining 44, BPI asserts Defendants have offered nothing to dispute the validity of the copyrights, and, unless a defendant can produce evidence that the plaintiff did not comply with statutory formalities and therefore had reason to believe the plaintiff's work was in the public domain, there is no reason to put the burden

on plaintiff to prove the validity of all facts underlying the validity of the copyright. *See Gaste v. Kaiserman,* 863 F.2d 1061, 1065 (2d Cir.1988).

According to BPI, Defendants have offered no other evidence to refute the validity of BPI's copyrights. That Norman Starkey signed the copyright applications for the works is assertedly inconsequential because the cited federal regulation does not require the declarant's "personal knowledge." A "declaration that the statements made in the application are correct to the best of that person's knowledge" suffices. 37 C.F.R. § 202.3(c)(2)(iii) (1997). BPI further argues Young provides no colorable or admissible evidence refuting authorship of any of the works at issue. The declaration of Leipold listing eighty-three works which allegedly suffer from some omission of copyright notice, it claims, has no effect on the validity of these copyrights. *See Religious Technology Center,* 923 F.Supp. at 1242 (finding defendant's reliance on alleged technical deficiencies, such as title discrepancies, in the copyright registrations did not constitute a persuasive challenge to the validity of the copyrights).

Based on the specific documents identified in the declarations in opposition to the motion, BPI argues Defendants offer a challenge to the validity of only 44 of the 1,914 works at issue. The specific documents, however, are exemplars, rather than the only works challenged.

I find the affidavits in support of the opposition to BPI's motion for summary judgment, in particular those of Jesse Prince and Robert Vaughan Young, create more than a "metaphysical doubt as to the material facts" relating to the validity of BPI's copyright over each work at issue. Jesse Prince was a Scientologist from 1976 to 1992 and served in the highest ranks, including second in command of RTC. (Prince Aff. ¶ 2.) In early 1983 he attended a meeting concerning copyrights at the ASI office. David Miscavige, Lymon Spurlock, Vicki Aznaran, Patricia Brice, then all high ranking officials of Scientology, were present. (*Id.* ¶ 31.) [5] According to Prince, Miscavige stated Scientology was "in trouble" concerning the copyright status of many published materials of founder L. Ron Hubbard. (*Id.*) Concern was expressed that many of Hubbard's published materials had entered the public domain because they had not been registered with the United States Copyright office for many years. (*Id.*) Miscavige stated these included copyrights for thousands of pages of material authored by Hubbard, including numerous policy letters and bulletins published by him. (*Id.*)

According to Prince, at the same meeting Miscavige specifically ordered Patricia Brice (at that time Hubbard's personal secretary and an employee of ASI) to begin the process of filing mass copyright registration of all of Hubbard's materials, even though to his knowledge many of these were in the public domain. (*Id.* ¶ 31.) Prince has personal knowledge that in mid–1983, Scientology began a massive program to register Hubbard's material with the United States Copyright Office. (*Id.*)

Robert Vaughan Young entered Scientology in 1968, became a staff member in 1969 and served in various local, state and international positions within the organization until 1989. (Young Decl. ¶ 2.) From 1982 to 1989 he was an employee of ASI which was responsible for the works of L. Ron Hubbard. (Young Decl. ¶ 3.) Part of ASI's function was to direct the publication of Hubbard's material through BPI. (*Id.*)

To obtain an objective sample of the works at issue, Young selected two exhibits from the front and the back of each of the boxes containing the 1,914 exhibits forming the basis of BPI's allegations of copyright violation. (*Id.* ¶ 6.) He accidentally reviewed an additional exhibit which he recorded for a total of 57 exhibits closely reviewed. (*Id.*) Young recorded the time span between the date each sampled work was written and published and the date of copyright registration which, for the majority of the works, exceeded five years. (*Id.* ¶ 18.) Only eight of these

---

**5.** As discussed in relation to Defendants' motion to amend the pretrial order, I reject BPI's assertion that Prince recanted his declaration.

exhibits were written after 1976, 45 were registered in the 1980's and 21 in 1983. Nearly all those in 1983 were registered by Patricia Brice. (*Id.* ¶ 20.) According to Young, he was at ASI in 1983 when it was discovered that many of Hubbard's works had fallen into the public domain and a massive effort was taken to register the works. (*Id.* ¶ 21.) Young states Miscavige, then chairman of the Board of ASI, remarked to Patricia Brice that, irrespective of the status of the works, she was to file for their copyright registration, and that a flurry of copyright filings followed. (*Id.*)

■ Once a work enters the public domain, it remains there irrevocably. The 1909 Copyright Act required, *inter alia*, that the copyright owner of a published document affix proper notice to each publicly distributed copy of the work.[6] Non-compliance with the notice requirement could inject the work into the public domain. "It was a trap for the unwary and many an author inadvertently forfeited copyright of his work in this manner." Marshall Leaffer, *Understanding Copyright Law* § 4.1 at 95 (1989). Under the 1976 Act, federal copyright begins when a work is created. However, for works publicly distributed on or after January 1, 1978 and before March 1, 1989, the 1976 Act retains the notice requirement and failure to affix proper notice on a publicly distributed work between these two dates can inject the work into the public domain unless, within five years of publication, the copyright owner takes certain steps to "cure" the improper notice. *Id.* With the passage of the Berne Convention Implementation Act of 1988, amending the 1976 Copyright Act, affixation of notice is permissive and omission of such notice on publicly distributed copies does not inject a work into the public domain. *Id.*

The 1976 Act is not retroactive and does not revive a work falling into the public domain under the 1909 Act. *Id.* at 96.

Moreover, the 1988 amendments to the 1976 Act are not retroactive. Thus, any work falling into the public domain for failure to comply with the 1976 Act notice provisions in effect before March 1989, remains permanently in the public domain. *Id.* For a work publicly distributed after January 1, 1978 and before March 1, 1989 without notice, such omission can be overcome if the copyright owner registers the work within five years and makes a reasonable effort to add notice to copies distributed to the public in the United States after discovery of the notice. *See* 17 U.S.C. § 405(a), as amended by the Berne Convention Implementation Act of 1988.

L. Ron Hubbard died in 1986. (Prince Aff. at 13.) Each publicly distributed copy of a work written by him which was so distributed before January 1978 must have had a proper copyright notice affixed to it. If there was non-compliance with this requirement, the work was injected into the public domain, precluding for eternity the possibility of obtaining a valid copyright to it. For Hubbard's works publicly distributed between January 1, 1978 and before March 1, 1989, failure to affix proper notice could have injected such works into the public domain unless Hubbard or the successor to his copyright took the necessary affirmative steps within five years of the publication to cure such notice defect. Thus if, as Prince and Young state under oath, works of Hubbard had fallen into the public domain before 1983 (with the proviso concerning those published after January 1, 1978), then any registration of copyright over such works would be invalid.

BPI challenges the credibility of Prince and Young. A district court judge is not, however, permitted on summary judgment "to weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505.

---

**6.** The concept of publication was undefined by the drafters of the 1909 Act, leaving the definition to develop through case law. The 1976 Act defines publication as

> [T]he distribution of copies ... of a work to the public by sale or other transfer of ownership, or by rental, lease or lending. The offering to distribute copies ... to a group of persons, for

purposes of further distribution ... or public display, constituted publication.... [D]isplay of a work does not of itself constitute publication.

17 U.S.C. § 101. *See* 1 *Nimmer on Copyright* § 4.04 (1998) for discussion of publication concepts under the 1909 Act.

Rather, the judicial role is limited "to determin[ing] whether there is a genuine issue for trial." Defendants have raised a genuine issue concerning whether the works at issue fell into the public domain, rendering the copyrights asserted by BPI invalid.

Additional evidence offered by Defendants raises genuine issues concerning, *inter alia*, the authorship by Hubbard of the works at issue. Such authorship forms the basis of BPI's ownership claims, particularly when coupled with the significant time gap between date of publication and date of copyright registration.

In sum, the serious nature of the evidence offered by Defendants raises genuine issues of fact concerning the validity of every one of the copyrights in issue and precludes summary judgment on the validity of (1) BPI's copyrights registered under the 1976 Act within five years of publication and (2) those registered under the 1906 Act (to both of which the rebuttable presumption of validity of copyright applies) and to those registered under the 1976 Act more than five years after publication (to which no such presumption applies). I therefore deny BPI's motion for summary judgment.

### V. *BPI's Motion for Sanctions under Fed.R.Civ.P. 11*

BPI moves under Rule 11 for sanctions, including the striking of 17 of the affirmative defenses contained in Defendants' Second Amended Answer and an award of costs and attorney fees against counsel for FACTNET and Wollersheim. BPI's motion for sanctions is premised on its argument that the affirmative defenses it wishes to strike have no basis in law or fact or both. In their response brief, FACTNET and Wollersheim assert their affirmative defenses have merit and there is evidence to support each of them.

■ Rule 11 is intended to prevent abuses arising from bad faith, negligence and, to some extent, professional incompetence. *White v. General Motors Corp.,* 908 F.2d 675, 680 (10th Cir.1990). To avoid Rule 11 sanctions, an attorney's actions must be objectively reasonable. *Id.* An allegedly offending attorney must present a colorable claim based on the facts and law at issue. *Id.* The standard is reasonableness under the circumstances. *Id.* Courts must "resist an interpretation of Rule 11 that would blur the roles of attorneys and finders of fact." *Bergeson v. Dilworth,* 749 F.Supp. 1555, 1567 (D.Kan.1990).

■ I find there has not been a showing that the affirmative defenses have been presented for any improper purpose. I also find a competent attorney could form a reasonable belief that the affirmative defenses have evidentiary support and are warranted by existing law or a nonfrivolous [sic] argument for the extension or modification of existing law. *See* Fed.R.Civ.P. 11(b). Therefore, I deny BPI's motion for sanctions under Rule 11.

### VI. *Defendants FACTNET's and Wollersheim's Motion to Vacate Protective Order.*

Defendants move for an order vacating the Stipulated Protective Order of September 8, 1995 on the basis that it is moot, its continued existence is oppressive, creates an undue burden, and it served its purpose during the time frame that RTC, the original plaintiff, pursued this action. Pursuant to the protective order, documents and deposition testimony have been designated as confidential by RTC, BPI, Defendants and non-party witnesses.

■ Defendants have not shown that intervening circumstances have eliminated any potential prejudice to any of the parties protected by the Stipulated Order. *See Jochims v. Isuzu Motors, Ltd.,* 151 F.R.D. 338, 342 (S.D.Iowa 1993). I therefore deny the motion without prejudice.

### VII. *Conclusion.*

For the aforesaid reasons, I deny BPI's Motion to Strike & In Limine Motion to Exclude Evidence, BPI's Motion for Summary Judgment against all Defendants, and BPI's Motion for Sanctions under Fed. R.Civ.P. 11. I deny without prejudice FACTNET's and Wollersheim's Motion to Vacate Protective Order. I grant FACT-

NET and Wollersheim's Motion to Amend Pretrial Order to Add a Witness.

Given the number of copyrights claimed in this case and the questions of fact relating to their validity, the provisions of Fed.R.Civ.P. 53(b) regarding complexity and exceptional circumstances have been met. The time required of a jury to determine similar issues in regard to each of the claimed copyrights, the failure of the parties to simplify the process and the need to manage the trial time and resources of this court make the appointment of a master prudent. As there is a jury demand, the provisions of Fed. R.Civ.P. 53(e)(3) shall apply.

Therefore, I appoint the Honorable Charles E. Matheson, Chief Judge of the United States Bankruptcy Court for the District of Colorado, special master with all the powers described in Rule 53(c) vested in him. He shall prepare his findings as to the validity, *vel non,* of each copyright claimed in this civil action and his findings shall be submitted to the jury. It is further ordered that any party objecting to any point of law contained in the special's master's report shall file such objection within twenty days next following the mailing date of the report by the court to counsel of record. As he deems appropriate, the special master shall advise the court from time to time of the status and progress of the proceedings before him. I specifically order pursuant to the provisions of Fed.R.Civ.P. 53(d)(1) that the special master need not set a time and place for the first meeting of the parties or their attorneys within 20 days from the date of this order of reference. He may set such meeting whenever he deems it appropriate and convenient.

I vacate the trial date of January 4, 1999 and final pretrial conference set for November 16, 1998.