### BOB MCLEMORE & CO., Inc.; Aff, Inc., and Robert V. McLemore, Plaintiff,

v.

### BRANCH BANKING & TRUST, CO.; HFNC Financial Corp.; and Home Federal Savings & Loan Association, Defendants.

#### No. Civ. 3:97CV396.

United States District Court, W.D. North Carolina, Charlotte Division.

Feb. 25, 1999.

**555**

Wyatt B. Durrette, Jr., Richmond, VA, Norman A. Smith, Smith and Feerick, Charlotte, NC, for Bob McLemore & Co., Inc., plaintiff.

Robert V. McLemore, Monroe, NC, pro se.

Robert H. Pryor, Karen K. Wolter, Smith, Helms, Mulliss & Moore, LLP, Charlotte, NC, for Branch Bank & Trust Co., defendant.

Robert C. Stephens, Zipporah M. Edwards, Horack, Talley Pharr & Lowndes, Charlotte, NC, for HFNC Financial Corporation, defendant.

## MEMORANDUM OF OPINION AND ORDER FOR SANCTIONS

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendants' motions for sanctions pursuant to Federal Rule of Civil Procedure 11. By Memorandum and Order of Dismissal filed September 24, 1998, the undersigned notified the Plaintiff that the Court *sua sponte* contemplated the imposition of sanctions pursuant to Rule 11 and 28 U.S.C. § 1927. On November 23, 1998, a hearing was held at which the parties and attorneys were present. The Plaintiff, Robert V. McLemore, appeared *pro se* and his former attorneys, Wyatt Durrette and Norman Smith, were represented by Robert Long. The Court has concluded that the imposition of sanctions is appropriate for the reasons and in the amounts set forth herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' complaint in this action alleged fraud on the Court by the Defendants in a prior action, *In re Maco Homes v. Branch Banking & Trust Co.*, 96 F.3d 1439 (table), 1996 WL 511494 (4th Cir. 1996), *cert. denied,* 520 U.S. 1117, 117 S.Ct. 1249, 137 L.Ed.2d 330 (1997) (*In re Maco*). Plaintiffs initiated that case in state court but it was removed to the United States

Bankruptcy Court after three of Plaintiffs' companies filed bankruptcy. Complaint, filed July 18, 1997 at ¶ 12. The Bankruptcy Court recommended that summary judgment be granted to the same Defendants sued herein, a decision adopted by the district court. *Id.* On appeal to the Fourth Circuit, the district court's decision was affirmed. *In re Maco Homes, Inc., supra.* Plaintiffs petitioned for a *writ* of *certiorari* which was denied by the Supreme Court. *Id.* In this action, Plaintiffs claim the Defendants' conduct and that of their attorneys in *In re Maco Homes* amounted to a fraud on the Court.

Robert McLemore was the president and sole stockholder of BMC, a management company which owned the stock of BMI Land Co., Inc. (BMI Land), Bob McLemore Homes, Inc. (BMH), Apple Homes, Inc. (Apple Homes), Apple Realty 2000, Inc. (Apple Realty) and MACO Homes, Inc. (MACO). Complaint, filed July 18, 1997, at ¶'s 2–8. BMI Land bought and developed land for residential real estate construction; BMH and Apple Homes constructed the new homes. *Id.* When a person contracted with one of those companies for new home construction, he was allowed to trade-in his existing home which was then listed with Apple Realty for sale. *Id.; see, e.g.,* ¶'s 22–24. If the house did not sell by the time the new home was constructed, MACO bought it and used it as rental property. *Id.*

Of course, financing was necessary for these endeavors and for some years, McLemore enjoyed a close banking relationship with Home Federal. *Id.,* at ¶'s 19–23. In 1988, Plaintiffs began a large-scale expansion which was partially financed by Home Federal. *Id.,* at ¶ 21. In 1989 Congress passed the Financial Institutions Reform Recovery and Enforcement Act (FIRREA) which provided that a thrift institution could not extend more than 15 percent of its unimpaired capital to one borrower. *Id.,* at ¶'s 22–23. An institution could obtain a waiver from the Office of Thrift Supervision (OTS) but a total

limit of 30 percent was imposed. *Id.* Home Federal did seek waivers from OTS in order to lend up to 30 percent of its capital to the Plaintiffs. *Id.*

In March 1990, Plaintiffs also began to obtain financing from BB & T, whom McLemore claims courted his banking business. *Id.,* at ¶ 14. By 1991, Plaintiffs allege both Home Federal and BB & T changed their attitude toward their financial relationships and ultimately refused to make any additional loans. The banks, it is contended, cited the economic downturn in the real estate market, FIRREA, and Plaintiffs' poor management practices in support of their decisions. *Id.,* at ¶'s 24–28. Plaintiffs, who had defaulted on some loan obligations, contend the two institutions were considering a merger and thus, determined they could no longer make such large loans to one entity. *Id.* In any event, Plaintiffs entered into workout agreements with the banks in exchange for additional financing and interest forbearance. *Id.* In those agreements, Plaintiffs released the banks from any and all claims. *Id.* When Plaintiffs defaulted under the terms of the workout agreements, the banks sought the remedies contained therein. In response, Plaintiffs began the action referenced above in which they asserted, among other claims, that the release provisions of the workout agreement are unenforceable because the agreements were signed under duress and the banks defrauded the Plaintiffs. The Fourth Circuit addressed these two issues.

The threat of foreclosure certainly pressured the McLemore group into signing the workout agreements, but BB & T and Home Federal had the legal right to threaten foreclosure because the McLemore group defaulted on its loans. Neither BB & T nor Home Federal created the McLemore group's weak financial position, thus forcing it to negotiate workout agreements from a weak bargaining position. Second, the undisputed evidence in the record demonstrates that, as an alternative to signing the

workout agreements, the McLemore group could have sought the protection of the bankruptcy code. Instead, and with the hopes of saving its business, the McLemore group chose to enter workout agreements that released BB & T and Home Federal from any actions it could pursue against them. . . . Next, the McLemore group contends that BB & T and Home Federal, on several occasions, represented to it that BB & T and Home Federal were not planning a merger. The McLemore group alleges that BB & T and Home Federal began merger negotiations as far back as 1989, culminating in a merger agreement at the end of l993. The McLemore group also alleges that Home federal represented to the McLemore group that the OTS had denied Home Federal a 30% waiver in 1992, when in fact Home Federal never applied for such a waiver. Furthermore, the McLemore group alleges that Home Federal misapplied the McLemore group's payments, causing the McLemore group to fall behind in its interest payments and to default on its loans. . . . Although the McLemore group's allegations may serve as the basis of fraud actions against BB & T and Home Federal, the McLemore group released the defendants from such actions in the workout agreements. There is no evidence in the record that BB & T and Home Federal fraudulently induced the McLemore group to sign the release agreements. With regard to each of the two workout agreements, the district court found that the McLemore group actively participated in the negotiations, reviewed drafts of the agreements and made changes to the agreements. The McLemore group was represented by counsel throughout the negotiations and the signing of the agreements. . . . [T]he release provision in the workout agreements is a valid defense against all of the McLemore group's claims against BB & T and Home Federal. Therefore, we need not consider the McLemore group's other arguments.

*In re Maco Homes, Inc.,* 1996 WL 511494 at *4–5 (footnote omitted).

This action was dismissed on the grounds of *res judicata* based on the *In re Maco Homes* decision. However, in reviewing the Defendants' motions for sanctions, it was noted that McLemore, and attorneys on his behalf, have filed numerous actions. Thus, while the imposition of sanctions is limited to the bringing of this action, those prior actions and their resolutions have great bearing on whether this action should have been filed.

It appears the first action brought by McLemore was *In re Maco, supra,* when Bob McLemore & Company, Inc. sued BB & T and Home Federal in Superior Court in Mecklenburg County. Once removed to the United States Bankruptcy Court due to the bankruptcy of several of McLemore's companies, it was assigned Bankruptcy Court Case No. 94–30421. During an adversary proceeding (AP No. 94–3108), the Bankruptcy Court recommended summary judgment be granted to BB & T and Home Federal. Attorney Norman Smith filed a motion in U.S. District Court asking that court to withdraw its reference of the matter to Bankruptcy Court. *Bob McLemore & Co., v. BB & T,* Case No. 3:95mc13. The district court, which denied the motion to withdraw the reference, accepted the Bankruptcy Court's recommendation and granted summary judgment. *McLemore & Co. v. BB & T, Case No. 3:95mc4; McLemore & Co. v. Home Federal,* Case No. 3:95mc60 (McLemore I). Smith filed appeals from these rulings to the Fourth Circuit which ultimately rendered its decision in *In re Maco, supra.* Durrette became involved after the initial filing.

Next, McLemore sued the individual officers of BB & T and Home Federal, *Bob McLemore Homes, Inc. and Apple Homes, Inc. v. John A. Allison, IV, Joe King, Jr. and J. Harold Barnes, Jr.,* Case No. 95cvs15647 (Superior Court Mecklenburg County) (*McLemore II*). This action, filed

by Durrette on behalf of McLemore, was voluntarily dismissed in January 1997. Counsel for the banks stated without opposition that the case was dismissed after the officers filed motions for summary judgment and the Plaintiffs' motions to amend the complaint were denied. The parties agree the facts involved in *McLemore II* were the same as those against the banks in *McLemore I*.

Durrette and Smith then refiled the *McLemore II* action in January 1997 in the Superior Court of Mecklenburg County. That action, captioned *Robert V. McLemore v. John A. Allison, IV, Joe King, Jr. and J. Harold Barnes, Jr.*, Case No. 97cvs1564, (*McLemore III*), was removed to the United States Bankruptcy Court based on bankruptcy proceedings.[1] Bankruptcy Court Nos. 93–3106 and 98–30884. After the removal to Bankruptcy Court, there was an adversary proceeding at which McLemore was represented by Smith. Adversary Proceeding No. 97–3268. Smith filed an untimely appeal from an order in Bankruptcy Court denying abstention and then filed a second appeal from the Bankruptcy Court's ruling denying him an extension of time within which to appeal. Those proceedings in district court are identified as *Bob McLemore Homes v. Allison*, Case No. 3:97cv451 (*McLemore IV*) and *Bob McLemore Homes v. Allison*. Case No. 3:97cv452 (*McLemore V*).

A third appeal from undisclosed rulings in those Bankruptcy Court proceedings was filed in the district court, *Robert V. McLemore v. John A. Allison, IV, Joe King, Jr. and J. Harold Barnes, Jr.*, Case No. 3:98cv400 (*McLemore VI*). At the sanctions hearing, Durrette and Smith stated they did not file this appeal; however, the docket sheets for the case list both as the filing attorneys and as representing

McLemore on the appeal. That appeal remains pending.

In May 1997, another appeal from an undisclosed Bankruptcy Court ruling was filed in district court, *BMI Land Co. v. Cooper*, Case No. 3:97cv311 (*McLemore VII*). Durrette and Smith stated at the sanctions hearing that neither filed this appeal, which was dismissed for failure to prosecute in August 1997.

In May 1997, the Bankruptcy Court filed a recommended order granting summary judgment to Home Federal in Bankruptcy Case Nos. 94–30421 and 95–3104. The district court accepted this recommendation in October 1997, *Maco Homes, Inc. v. Home Federal Savings & Loan*, Case No. 3:97mc43 (*McLemore VIII*). According to Durrette, this issue involved a claim of wrongful set-off and in December 1997, he filed an appeal to the Fourth Circuit which is still pending.

In September 1997, an action captioned *McLemore v. Stephens, Pryor, Wooten and Hodges* was removed from the Superior Court of Mecklenberg County to federal court and assigned Case No. 3:97cv480. In that action, McLemore sued the attorneys for BB & T and Home Federal and the two presiding bankruptcy court judges. In dismissing that case, U.S. District Court Judge Robert D. Potter stated:

> Plaintiff is making a thinly veiled attempt to relitigate the same cause of action that he lost in [*In re Maco Homes, v. Branch Banking & Trust Co.*, 96 F.3d 1439 (4th Cir.1996), *cert. denied*, 520 U.S. 1117, 117 S.Ct. 1249, 137 L.Ed.2d 330 (1997) ]; namely, that BB & T and Home Federal engaged in fraudulent activities and the Attorney Defendants made misrepresentations to the bankruptcy and district courts. In [that case], the Plaintiff made the allegations against the banks; in this case the Plaintiff has merely made the same alle-

---

1. At the hearing, the Defendants argued that the action was in fact dismissed prior to removal by the Superior Court Judge Forrest Ferrell who held the releases signed by McLe-

more warranted the dismissal of the individual bank officers. According to the Defendants, this action was later refiled in state court and then removed to federal court.

gations against the banks' legal representatives.

*McLemore v. Stephens,* Case No. 3:97cv480, *aff'd without opinion,* No. 98–11007 (4th Cir.1998). Although it is unclear who filed the state court action, McLemore pursued this matter *pro se* in federal court.

McLemore also filed two *pro se* appeals from bankruptcy court rulings, both of which remain pending, *McLemore v. Home Federal,* Case No. 3:98cv407; *McLemore v. Home Federal,* Case No. 3:98cv408.

Durrette admitted at the hearing that the filing of the instant action was at his prompting. As of this writing, none of the above matters have resulted in any relief favorable to McLemore.

## II. DISCUSSION

### A. Sanctions against Durrette and Smith.

Federal Rule of Civil Procedure 11 provides in pertinent part:

By presenting to the court ... a pleading ... an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the *circumstances-*

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims ... are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law ...;

(3) the allegations and other factual contentions have evidentiary support or, ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

Fed.R.Civ.P. 11(b).

Title 28 U.S.C. § 1927 provides in pertinent part that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct."

At the hearing, counsel for Durrette and Smith argued that they had appeared as counsel in only four proceedings because some of the matters actually evolved out of or were related to each other.[2] Further, counsel argued that Rule 11 sanctions in federal court may not be imposed in a case originally filed in state court and removed to federal court. These arguments miss the point: it is the filing of *this* action for which sanctions are to be imposed. The Court reviews the previous filings only as means of ascertaining whether the attorneys were on notice, or should have been, that *this* action was not well grounded in fact or law.

Mr. Durrette addressed the Court during the hearing and advised that in his opinion, the underlying fact of whether McLemore's financial troubles were the result of the banks' conduct has never been determined by any court. As a result, he did not believe that *res judicata* barred the bringing of this case. Durrette also stated he made a legal determination not to bring a motion for relief from the judgment in the *In re Maco* case (*McLemore I*) because the facts on which the instant action are based had not occurred at the time *In re Maco* was filed. McLemore claimed that he asked the bank officers whether a merger was being considered prior to signing the release agreements and was told no such merger was contemplated. According to Durrette, in a later action against the officers individually, it was learned that the merger was in fact contemplated at the time.[3]

---

**2.** Rule 11 applies to *each* filing by an attorney regardless of whether more than one filing is made in the same action.

**3.** In response to the motion for sanctions, Plaintiffs filed a lengthy brief addressing the merits of the dismissal motion but perfunctorily considered the sanctions issue. At the

Durrette also acknowledged the high standard for relief under Rule 60(b)[4] was one reason for bringing an independent action.

Mr. Smith also addressed the Court at the hearing and reiterated most of the information provided by Durrette. He stated that he did not file a Rule 60(b) motion because more than one year had passed since the entry of judgment and in his opinion, the rule allowed an independent action to be brought.

On November 7, 1996, Joe King signed an affidavit for use in *McLemore II* in which he averred that from 1989 through 1993 he had discussions with BB & T representatives concerning a merger of Home Federal. A similar affidavit was provided by Harold Barnes on November 6, 1996, for use in the same lawsuit. These two affidavits constitute the "new evidence" upon which this lawsuit is based. Having reviewed the record, the Court finds Durrette and Smith as attorneys involved in the prior actions knew or should have known that these affidavits did not, in fact, constitute new evidence.

First of all, in November 1994 Home Federal included in its answer to the adversary proceeding (*McLemore I*) an admission that BB & T negotiated with it concerning a merger during the time period at issue. *See,* Exhibit 7 attached to Defendants, HFNC Financial Corp. and Home Federal Savings and Loan Association's Memorandum of Law in support of Motion for Sanctions, filed November 3, 1997. And, in that adversary proceeding, Home Federal filed answers to interrogatories dated March 13, 1995, in which the following was admitted:

> The first contact between BB & T and Home Federal occurred in early Decem-

ber, 1989. John Allison, President of BB & T, telephoned Joe King regarding BB & T's interest in acquiring Home Federal. Mr. Allison, along with Henry Williamson, then met with Joe King and Harold Barnes to discuss BB & T's interest and the terms of their proposal. This meeting occurred on or about December 15, 1989.

Exhibit 8, *attached to id.,* at 3. The answers also disclosed that written offers or proposals of merger or acquisition had been received in 1989, 1990, 1992 and 1993. *Id.,* at 4. Thus, as pointed out by defense counsel, McLemore and his attorneys had this information provided to them prior to the time the Bankruptcy Court recommended the grant of summary judgment to the banks and prior to the acceptance of that recommendation by the district court. This is precisely the same information provided in the King and Barnes affidavits which are purported to constitute new evidence.

At the hearing in *McLemore I* on the banks' motions for summary judgment, bank counsel argued that McLemore had hired a "workout specialist" named Garverick who testified during a deposition that in late 1992 he prepared information for McLemore concerning what liability the banks might have for their merger negotiations during their relationship with McLemore. Exhibit 12, Transcript of Hearing before the Honorable Marvin R. Wooten, United States Bankruptcy Judge, held November 10, 1994, *contained in* Appendix to BB & T's Memorandum of Law in support of Motion to Dismiss ("BB & T Appendix"), filed September 27, 1997, at 14. Thus contrary to the contentions raised here, McLemore was aware before

hearing, the only ground raised to support the filing of this action was the discovery of this new evidence.

4. Rule 60(b) provides in pertinent part:
   On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons:

(2) newly discovery evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud ..., misrepresentation, or other misconduct of an adverse party; ....

entering into the workout agreement which contained the releases that the banks had been negotiating a merger and he had already begun investigation of his legal options.

Moreover, at that same hearing Mr. Durrette argued to the Court that King and Barnes personally stood to gain financially by the merger and described the contents of an affidavit in which the banks contemplated McLemore's sacrifice in order to achieve the merger in early 1993. *Id.*, at 53.

When the Bankruptcy Court issued its ruling, the bank attorneys were told to prepare the Recommended Findings of Fact and Conclusions of Law, as is the custom in Bankruptcy Court.[5] Durrette filed extensive objections to those findings, claiming that new evidence had been uncovered which warranted reconsideration of the grant of summary judgment. Exhibit 17, Plaintiffs' Sur–Reply Brief and Supplementation of the Record with Newly Discovered Evidence on Plaintiffs' Objections to the Recommended Orders on BB & T's Motion for Summary Judgment, filed September 20, 1995, *contained in* BB & T Appendix. Among the new evidence cited is a May 25, 1993, letter from Allison reporting a tentative merger between Home Federal and BB & T in which it is noted that the merger had not yet been reported to the public, a formal proposal of merger submitted to Home Federal on August 17, 1993, just three days before McLemore signed releases with Home Federal after being told no mergers were contemplated, and documents from 1989, 1991, 1992, and 1993 all relating to the merger. *Id.*, at 2, 13, 16. Therefore, before the affidavits were obtained from King and Barnes, McLemore and his attorneys were well aware of facts supporting their allegations that the two banks were in serious merger discussions despite

whatever assurances may have been given to McLemore personally.

On November 7, 1995 (exactly one year prior to date the affidavits purporting to constitute new evidence were signed), Durrette filed the brief on appeal in *McLemore I* with the Fourth Circuit. Exhibit 19, Brief of Appellants, *contained in* BB & T Appendix. Listed in the table of contents as a statement of fact is the heading, "PHASE I 1989–1990: BEHIND THE SCENES, BB & T AND HOME FEDERAL WERE ACTIVELY FORMULATING THEIR MERGER STRATEGY." *Id.*, at i. Later on Durrette wrote:

> BB & T solicits a relationship with the McLemore Group and identified the corporation as a merger obstacle.
>
> BB & T presented its first written offer to acquire Home Federal in December of 1989. Almost simultaneously, BB & T solicited a long-term lending relationship with Home Federal's largest customer, the McLemore Group. In February of 1990, McLemore met with BB & T Vice President Wright Uzzell and explained on several occasions and in great detail the entire McLemore long-term fiduciary relationship with Home Federal. After McLemore had detailed his special relationship with Home Federal, BB & T told McLemore that it wanted to become McLemore's "long-term bank," similar to Home Federal.

*Id.*, at 17 (citations omitted). During oral argument of the appeal before the Circuit, Durrette clearly was aware that merger negotiations had occurred prior to that point in time when McLemore claimed he was assured by Home Federal officials that no mergers were contemplated. "[I]n 1990 there was some newspaper speculation that there was going to be this merger with Home Federal and BB & T." Exhibit 21, Transcript of Argument before Fourth

---

**5.** An argument was made that by doing so the bank attorneys had "crossed the line" and attempted to perform a quasi-judicial function thus perpetuating a fraud on the court. Counsel also argued that findings of fact should never be made in connection with a summary judgment motion and thus, the bank attorneys defrauded the court. If not spurious, these allegations are so weak as to warrant no discussion.

Circuit Court of Appeals on April 5, 1996, *contained in* BB & T Appendix, at 16. During that argument, bank counsel pointed out that there were in fact five merger proposals from BB & T to Home Federal, none of which were accepted. *Id.*, at 22. But, more importantly because BB & T is a state financial institution the OTS limits on lending would not have applied even if the merger had been completed. *Id.*, at 21. The banks' counsel went on to note:

> I would like to invite The Court's attention to Mr. Garverick, [McLemore's] number two man's testimony, which is in the Joint Appendix..... He testified in January and February of '93, before our release, he and Mr. McLemore discussed whether or not this merger, which was in the rumor publicly, was effecting these ... two institution's conduct. And they consulted counsel on that subject.... So, when they gave this release, there was no fraud. They had already discussed among themselves the possibility that this was going on.

*Id.*, at 25–26 (citations omitted). Bank counsel also argued to the Circuit that in February 1993 Garverick showed his lender liability complaint to Home Federal based on the merger negotiations in which Garverick stated, "I think you are doing bad things to us. I think it has something to do with your wanting to merge or changing your way of doing business." *Id.*, at 30. Later, Garverick threatened to sue Home Federal. *Id.* About one month later, McLemore entered into an agreement with Home Federal whereby $390,000 in interest was forgiven in exchange for a release. *Id.*, at 34. And, bank counsel argued to the Circuit that McLemore knew about the merger discussions when he signed the release and therefore must be precluded from claiming his release was fraudulently obtained. *Id.* Otherwise, "you'll never be able to release a claim, particularly one you know about." *Id.*

In the face of this undisputed documentary evidence, there was absolutely no factual basis on which counsel could have determined that the King and Barnes affidavits constituted new evidence. At best, those affidavits were cumulative, adding to the already substantial evidence amassed by McLemore that BB & T and Home Federal were contemplating merger at the same time as working with him and purportedly assuring him they were not in such discussions. The Bankruptcy Court, the district court and the Fourth Circuit all had this evidence presented to them and all rejected the Plaintiffs' contentions. The Court finds the King and Barnes affidavits did not constitute new evidence.

■ Nor does such evidence support a cause of action for fraud on the court. Assuming *arguendo* that these affidavits conflicted with evidence previously known, the conflict is nothing more than "routine evidentiary conflict" which is insufficient to support a claim of fraud on the court. *Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.*, 827 F.2d 984, 986 (4th Cir. 1987). And, as noted by bank counsel, had Durrette and Smith merely reviewed the pleadings filed in the case, they would have recalled the answers to interrogatories in which the same information provided by King and Barnes in November 1996 was given to the Plaintiffs in March 1995. These answers "put [Plaintiffs] on notice" and counsel's failure to review the pleadings does not support a claim for fraud on the court. *Id.*, at 987.

Moreover, in order to state a claim for fraud on the court, a plaintiff must be able to show

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the [losing party] in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the [losing party]; and (5) the absence of any adequate remedy at law.

*Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters,* 675 F.2d 1349, 1357 (4th Cir. 1982), *cert. denied,* 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (1983). None of these elements were shown here.

The Court thus finds that neither Durrette nor Smith, both of whom signed the complaint, conducted a reasonable investigation of the factual and legal basis for the claim before filing this action.

To be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint. A complaint containing allegations unsupported by any information obtained prior to filing violates the required prefiling factual investigation. That is, where there is no factual basis for a plaintiff's allegations, the complaint violates Rule 11's factual inquiry requirement. The prefiling investigation must also uncover some basis in law to support the claims in the complaint. A prefiling investigation of the law will not pass muster under Rule 11 where the complaint has "absolutely no chance of success under the existing precedent."

*Brubaker v. City of Richmond,* 943 F.2d 1363, 1373 (4th Cir.1991) (citations omitted) (emphasis in original). Had counsel objectively reviewed the pleadings in *McLemore I* prior to filing this action, they would have realized that the same information contained in the King and Barnes affidavits had been learned during the course of litigating that action. Although in different forms, the same evidence was adduced, sometimes by the Plaintiffs' attorneys. There was absolutely no factual basis for a claim based on fraud on the court. And, even cursory research into the elements of an independent action in equity should have revealed there was no chance of success. The very issue on which this action is based, that Home Federal and BB & T officials fraudulently induced McLemore to enter into release agreements, was considered and rejected by the Fourth Circuit. The evidence contained in the King and Barnes affidavits

were present in the prior case, presented to every court considering the case and rejected thereby. The evidence was not new and counsel do not appear to have considered the issue of *res judicata.*

■ Moreover, in this Circuit, an independent action in equity should not be brought prior to moving pursuant to Rule 60(b) to set aside the judgment in the district court. *Weisman v. Charles E. Smith Management, Inc.,* 829 F.2d 511 (4th Cir.1987). The evidence recounted above shows that during the litigation of *McLemore I* this information, although not in the form of the King and Barnes affidavits, was available and known to Plaintiffs' attorneys. Even if the information was discovered while *McLemore I* was on appeal, counsel could have filed such a motion in the district court and then appealed both rulings in the Circuit. *See, e.g., Smith v. Reddy,* 101 F.3d 351, 353 (4th Cir.1996).

For the reasons stated herein, the Court finds that Durrette and Smith violated Rule 11 because applying a standard of reasonable objectiveness, " 'a reasonable attorney in like circumstances could [not have] believe[d] his actions to be ... legally justified' " and there was no factual basis to support such a claim. *In re Sargent,* 136 F.3d 349, 352 (4th Cir.), *cert. denied,* ── U.S. ──, 119 S.Ct. 133, 142 L.Ed.2d 108 (1998) (citations omitted); *Brubaker, supra.* However, the Court does not find that the attorneys violated 28 U.S.C. § 1927 because there is no indication that such actions were taken in bad faith. *Brubaker,* 943 F.2d at 1382–83 n. 25.

**B. Sanctions against McLemore.**

At the hearing, McLemore testified under oath that he had been told by seven attorneys and three judges that he had a valid claim and a right to a jury trial. He admitted into evidence a letter from a retired superior court judge who had reviewed his case in 1994 and who opined:

You appear to have evidence which, if properly presented, should likely be sufficient to take your claim against Home Federal Savings and Loan for breach of a fiduciary duty to you to a jury for determination. I do not have a firm opinion about your prospects on appeal with respect to BB & T's summary judgment as to your claims against it.

McLemore's Exhibit 9. It was undisputed that this action was filed on the advice of Durrette and Smith. The Court can find no violation of Rule 11 by McLemore and therefore no sanctions are imposed.

## C. Form and amount of sanctions.

■ In considering the nature of sanctions to be imposed, the Court looks first to the language of the Rule.

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed.R.Civ.P. 11(c)(2). The "primary, or 'first' purpose of Rule 11 is to deter future litigation abuse." *In re Kunstler*, 914 F.2d 505, 522 (4th Cir.1990), *cert. denied*, 499 U.S. 969, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991). When a monetary award is considered, the Court should consider "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." *Id.*, at 523. And, as the Rule states, a sanction of attorneys' fees must be limited to those incurred in this action.

■ It was noted at the hearing that counsel for both banks warned Durrette and Smith that sanctions would be sought unless the instant suit was dismissed. *Id.*

Nonetheless, reasonable attorneys' fees " 'does not necessarily mean actual expenses and attorney's fees.' " *Id.* (quoting *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 211 (4th Cir.1988)). Counsel for BB & T have submitted an affidavit showing a total of 240.80 hours expended on this litigation, excluding time spent in connection with the hearing on the sanctions issues. Attorney Pryor billed at hourly rates ranging from $202.50 to $216.50 and his associate billed at hourly rates ranging from $99.00 to $126.00. While counsel for Durrette and Smith acknowledges the reasonableness of these rates, he does object to the time expended. After reviewing the matter, the undersigned agrees.

Mr. Pryor's associate, Ms. Wolter, spent 67.8 hours in researching, drafting and editing the motion to dismiss this action and preparing the reply to the Plaintiffs' response. Mr. Pryor spent an additional 77.6 hours doing similar functions. This Court simply cannot find that 145.4 hours of attorney time is required to prepare a motion to dismiss an action when the attorneys have been involved in the prior action on which dismissal is predicated. Even conceding that substantial time would have been required to review certain records from the prior action, including depositions, a total time of 20 hours seems more than appropriate.

Ms. Wolter also worked on the motion for Rule 11 sanctions, expending a total of 44.7 hours. Mr. Pryor spent 9.8 hours on that motion. The Court finds a total of 10 hours appropriate. Of the remaining time expended on miscellaneous matters, the Court finds only 6 hours warranted. This totals 36 hours, half of which will be allocated to Mr. Pryor and half to Ms. Wolter. No time is approved for paralegal services. The hourly rate for each attorney is set at the mid-range of the rates submitted. Mr. Pryor is therefore billed at $207.00 per hour; Ms. Wolter at $112 per hour. As a result, the total reasonable attorneys' fees would be the sum of $3,726 for Mr. Pryor

and $2,016 for Ms. Wolter, a total of $5,742. Because the Court finds the time expended was unreasonable, it must of necessity find the time spent on Westlaw unreasonable and will reduce the same by half. Thus, expenses of $446 are considered reasonable.

The attorneys for Home Federal are Mr. Stephans and Ms. Edwards who bill at hourly rates of $190.00 and $125 respectively. Ms. Edwards spent 49.50 hours reviewing the file and pleadings from the prior action. She spent 44 hours working on the motion to dismiss and the reply to the Plaintiffs' response. Mr. Stephans spent 28 hours on the same motion. As with counsel for BB & T, the Court will limit the time to 20 hours. In connection with the motion for sanctions, Ms. Edwards spent 31.5 hours and Mr. Stephans, another 25 hours. As with BB & T, the Court finds 10 hours more than sufficient. All remaining time is excluded except for 6 hours and no amount is approved for paralegal time. Attributing half of the 36 hours approved to Mr. Stephans, the total is $3,420 for his services and $2,250 for those of Ms. Edwards. The total approved is therefore $5,670. The expenses of $400 are reasonable.

Having considered the reasonableness of the fees sought, the Court next considers the ability to pay of Durrette and Smith. Each of them has submitted financial information for *in camera* review.

"The offender's ability to pay must also be considered, not because it affects the egregiousness of the violation, but because the purpose of the monetary sanctions is to deter attorney and litigant misconduct. Because of their deterrent purpose, Rule 11 sanctions are analogous to punitive damages. It is hornbook law that the financial condition of the offender is an appropriate consideration in the determination of punitive damages...." A court should refrain from imposing a monetary award so great that it will bankrupt the offending parties or force them from the future practice of law.

*In re Kunstler*, 914 F.2d at 524 (quoting *White v. General Motors Corp.*, 908 F.2d 675, 685 (10th Cir.1990)).

While respecting the desire for confidentiality of their financial conditions, the Court does note Mr. Durrette has a substantially greater ability to pay a sanction than Mr. Smith by virtue of both income and assets.

There are other factors to be considered, however. Although the Court does not find either attorney acted with malice or in bad faith, based on their legal experience and years of practice, both counsel acted rashly in filing this action in the face of the evidence available for their review. *Id.* Mr. Smith has been previously sanctioned in connection with his representation of Mr. McLemore. *Id.*, at 525.

> In this case, joint and several liability among attorneys, who each signed a complaint in violation of Rule 11, [is] not inappropriate. [E]ach attorney has a duty to ensure that the pleading he has signed comports with Rule 11. Issues of individual culpability do not arise where each sanctioned party has committed the same Rule 11 violations.

*Id.*

Considering all of the above factors, the Court finds an award of attorneys' fees to each bank is appropriate. The award for BB & T totals $6,188; the award for Home Federal totals $6,070. The total amount of fees awarded is the sum of $12,258 which the Court imposes jointly and severally on Durrette and Smith as a sanction.

In addition, the Court finds these attorneys have abused the judicial resources of the federal court system by filing this action. It therefore imposes as a sanction on Durrette the sum of $5,000 as a penalty which shall be paid to the Clerk of this Court. The sum of $1,000 is imposed as a penalty on Smith and shall be paid to the Clerk of this Court.

## III. ORDER

**IT IS, THEREFORE, ORDERED** that Wyatt Durrette and Norman Smith are hereby **SANCTIONED;** and

**IT IS FURTHER ORDERED** that the Defendant BB & T is awarded the sum of **SIX THOUSAND, ONE HUNDRED EIGHTY–EIGHT DOLLARS ($6,188.00)** as attorneys' fees and expenses, and this amount is imposed as a joint and several sanction on Wyatt Durrette and Norman Smith; and

**IT IS FURTHER ORDERED** that the Defendant Home Federal Savings & Loan Association is awarded the sum of **SIX THOUSAND SEVENTY DOLLARS ($6,070.00)** as attorneys' fees and expenses, and this amount is imposed as a joint and several sanction on Wyatt Durrette and Norman Smith; and

**IT IS FURTHER ORDERED** that Wyatt Durrette is sanctioned in the amount of **FIVE THOUSAND DOLLARS ($5,000.00)** which shall be paid to the Clerk of this Court; and

**IT IS FURTHER ORDERED** that Norman Smith is sanctioned in the amount of **ONE THOUSAND DOLLARS ($1,000.00)** which shall be paid to the Clerk of this Court; and

**IT IS FURTHER ORDERED** that the Clerk of Court shall provide a copy of this Order to the North Carolina State Bar and the Virginia State Bar; and

**IT IS FURTHER ORDERED** that Robert McLemore is hereby prohibited from filing any action or proceeding in the United States District Court for the Western District of North Carolina arising from the facts involved in this proceeding.