David **BURTON**, Plaintiff,

v.

**R.J. REYNOLDS TOBACCO CO.** and **Brown & Williamson Tobacco Corporation,** Defendants.

No. 94–2202–JWL.

United States District Court, D. Kansas.

Nov. 1, 2001.

Kenneth B. McClain, Nicholas E. Mebruer, Nimrod T. Chapel, Jr., Donald H. Loudon, Jr., Scott B. Hall, Humphrey, Farrington & McClain, Independence, MO, Gregory Leyh, Kanasas City, MO, for plaintiffs.

M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, John C. Noonan, Teresa L. Clark, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Stanley D. Davis, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Junius C. McElveen, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Sydney Bosworth McDole, William E. Marple, Thomas C. Pavlik, Clay Alfred Hartmann, Stephen B. Yeager, Jones, Day, Reavis & Pogue, Dallas, TX, Stephen J. Kaczynski, Michael A. Nims, Paul G. Crist, Jones, Day, Reavis & Pogue, Cleveland, OH, Roger D. Stanton, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Prairie Village, KS, Catherine L. Bjorck, Jones, Day, Reavis & Pogue, Dallas, TX, for R.J. Reynlds Tobacco Co.

James D. Griffin, Blackwell Sanders Peper Martin LLP, Kansas City, MO, James M. Warden, Blackwell Sanders Peper Martin LLP, Overland Park, KS, Frank C. Woodside, III, Mary-J0 Middelhoff, Dinsmore & Shohl LLP, Cincinnati, OH, Bruce G. Sheffler, James Mirro, Peter K. Eck, Nicholas Booke, Chadbourne & Parke LLP, New York City, Roger W. Warren, Sanders Conkright & Warren LLP, Kansas City, MO, for American Tobacco Co.

## MEMORANDUM AND ORDER

O'HARA, United States Magistrate Judge.

### I. Introduction.

This case is before the court on defendants' motion to strike the supplemental disclosures of two of plaintiff's retained experts, David M. Burns, M.D. and Neil E. Grunberg, Ph.D., pursuant to Fed.R.Civ.P. 37(c)(1) (**doc. 453**). Plaintiff has responded (doc. 457), and defendants have replied (doc. 461). For the reasons explained below, although the court will not impose the drastic remedy of striking the supplemental disclosures, substantial monetary sanctions will be imposed against plaintiff's counsel.

### II. Background.

Plaintiff provided defendants with initial expert disclosures for Drs. Burns and Grunberg several years ago. During a status and case management conference on April 23, 2001, the court imposed a May 11, 2001–deadline for the parties to supplement discovery pursuant to Fed.R.Civ.P. 26(e) (doc. 386 ¶ 3, at 3). Plaintiff did not timely serve defendants with updated reports for the two experts in question.

On June 14, 2001, mindful of the court's then-recent rulings that defendants did not have a valid claim of privilege with regard to certain documents, the court granted plaintiff's motion for leave to update the reports of Drs. Burns and Grunberg (doc. 408). However, in order to be able to determine the extent to which the newly available documents impacted these experts' updated re-

ports, the court ordered that the supplemental disclosures were required to include, "at a minimum, a listing of the specific additional documents the experts have reviewed" (emphasis added), and further ordered plaintiff to provide defendants "a 'redlined' copy showing exactly how the review of those documents have changed the experts' opinion as expressed in their reports or any deposition testimony they may have given in this case." These "detailed" written supplemental disclosures were ordered to be served by July 13, 2001.

In granting plaintiff leave to update these reports, the court specifically attached significance to the fact that this case was, at that time, set for trial more than seven months away. The court remarked that its "approach to this issue would be significantly different if trial were imminent instead of seven months away."

Furthermore, the court granted plaintiff leave to update these reports with the express caveat that defendants would have the right to challenge the propriety of the supplemental information and to seek relief, if appropriate, under Fed.R.Civ.P. 37(c)(1). The court ordered defendants to file any corresponding motion to strike by August 10, 2001.

On August 31, 2001, plaintiff belatedly served on defendants the updated reports of Drs. Burns and Grunberg. These reports failed to identify any additional documents that Drs. Burns and Grunberg reviewed, and plaintiff failed to provide defendants with a redlined version of the reports showing how the experts' review of those documents changed their opinions.

Nearly one month later, on September 27, 2001, plaintiff sent defendants a letter containing lists of additional documents upon which Drs. Burns and Grunberg's opinions were based. On October 16, 2001, plaintiff sent defendants another letter containing a list of yet additional documents upon which

Dr. Burns' updated report was based, and explained that those documents were inadvertently omitted from the September 27, 2001–letter. The documents in these lists include some documents that became available by virtue of the court's ruling that they were not privileged, as well as other documents that were produced before 1996 and before plaintiff's initial expert disclosures. Significantly, however, all of these documents were listed on plaintiff's final exhibit list, to which defendants filed extensive objections on May 18, 2001. Thus, it appears defendants have had access to at least substantially all of these documents for years.[1]

Also on September 27, 2001, plaintiff provided defendants with a redlined version of Dr. Burns' supplemental report which failed to show how Dr. Burns' review of newly available documents changed his opinion. Plaintiff has never provided defendants with a redlined version of Dr. Grunberg's supplemental report. In fairness, it must be noted here that plaintiff's failure to provide helpful redlined versions of the reports is somewhat understandable because neither report purports to be a new and improved re-draft of an initial expert report. Rather, both updated reports are truly "supplemental" in the sense that both are intended to be separate and distinct additions to the initial expert reports.

Nevertheless, the plain and inescapable fact remains that plaintiff has failed to abide by the procedural requirements set forth in the court's June 14, 2001–order. More importantly, plaintiff has entirely failed to abide by the spirit of the court's June 14, 2001–order, which was to allow plaintiff to update the reports of Drs. Burns and Grunberg in light of newly available "de-privileged" documents. That is, the court cannot discern how, if at all, any newly available documents impacted these experts' updated reports. Quite simply, there appears to be no good

1. Defendants also point out that Dr. Grunberg's updated report relies on conversations with plaintiff. Arguably, this conversation may violate the spirit of the court's June 14, 2001–order. However, defendants do not cite any authority to suggest these conversations are impermissible. In any event, as discussed below, Dr. Grunberg's conversation with plaintiff simply revealed information consistent with Dr. Grunberg's initial report—that is, that plaintiff's behavior since Dr. Grunberg's initial report in 1995 is consistent with Dr. Grunberg's original opinion that plaintiff is an addicted smoker.

reason why plaintiff could not have provided these updated expert reports by the court's May 11, 2001–deadline for supplementing discovery.

Pursuant to Fed.R.Civ.P. 37(e)(1), defendants now move to strike the updated reports of Drs. Burns and Grunberg on the basis that plaintiff has not demonstrated substantial justification for failing to disclose this information earlier in this litigation. In response, plaintiff argues defendants have not been prejudiced by plaintiff's failure to disclose this information at an earlier date.

### III. Analysis.

■ A party, such as plaintiff in this case, who "without substantial justification, fails to disclose information required by Rule 26(a) or 26(e)(1) ... is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R.Civ.P. 37(c)(1). In applying this rule, "the court must first determine whether substantial justification for failing to make the required disclosures exists." *Mounger v. Goodyear Tire & Rubber Co.,* Case No. 99–2230–JWL, 2000 WL 1466198, at *2 (D.Kan. Sept.22, 2000) (citing case law). If the party who failed to make the required disclosures fails to demonstrate substantial justification, then the court must determine whether the failure to disclose was harmless. *Id.*

In this case, as earlier indicated, plaintiff has advanced absolutely no justification for failing to timely disclose the updated expert reports, let alone a substantial justification. Rather, plaintiff merely argues that defendants are unable to show any legitimate prejudice or surprise by plaintiff's failure to disclose these updated expert reports at an earlier time.

■ Failure to disclose is considered harmless when there is "no prejudice to the party entitled to the disclosure." *Id.* (emphasis added); *accord Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D.Kan.1995). The burden to establish harmlessness is on the party who failed to make the required disclosure, *Mounger,* 2000 WL 1466198, at *2, which, in this case, is plaintiff.

■ Defendants argue they have suffered prejudice by virtue of the fact that trial is now only a little more than three months away, rather than seven months away, as was the case when the court originally granted plaintiff leave to supplement these expert disclosures on June 14, 2001. This argument is unpersuasive. The last deadline imposed by the court for plaintiff to file and serve updated reports for Drs. Burns and Grunberg was July 13, 2001. Presumably, defendants are the ones who allowed plaintiff additional time to file these disclosures by August 31, 2001. Although defendants' willingness to attempt to accommodate plaintiff's need to extend this deadline is certainly commendable, the fact that defendants consented to the extension arguably renders them partially responsible for plaintiff's woefully belated supplementations. But, the court finds little fault with defendants' handling of this issue, at least on this basis.

Defendants further argue they have suffered prejudice because these belated disclosures complicated the defendants' preparation of their motion for summary judgment, which was filed October 19, 2001. The court certainly understands and agrees that defendants have been inconvenienced by plaintiff's attempt to extend disclosure up to the eve of the dispositive motion deadline. That being said, the court seriously doubts that plaintiff's belated filing of these supplemental disclosures will be the deciding factor that makes or breaks defendants' motion for summary judgment.

Finally, defendants most persuasively argue they have been harmed by plaintiff's failure to abide by the court's order because defendants are now required to guess at the bases of plaintiff's newly disclosed opinions. Defendants argue that they are hindered in their ability to prepare to effectively cross-examine Drs. Burns and Grunberg at trial because their opinions and the bases for them are moving targets. This, of course, is precisely the type of prejudice sought to be avoided by the mandatory disclosure requirements of Fed.R.Civ.P. 26(a)(2). *See* Fed. R.Civ.P. 26 advisory committee's notes to the 1993 amendments (remarking that this requirement is designed to impose a duty to

disclose information "sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross-examination").

Thus, considering the fact that defendants have been inconvenienced by plaintiff's attempt to extend disclosure up to the eve of the dispositive motion deadline and, more importantly, the fact that defendants are hindered in their ability to prepare to effectively cross-examine Drs. Burns and Grunberg, plaintiff has failed to establish that defendants suffered "no prejudice" by plaintiff's failure to timely make the required disclosures. Accordingly, sanctions are appropriate in this case.

■ In considering what sanctions to impose, the court must bear in mind the rationale and purposes to be served by sanctions, including: (1) deterring future litigation abuse; (2) punishing present litigation abuse; (3) compensating victims of litigation abuse; and (4) streamlining court dockets and facilitating case management. *White v. General Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990) (discussing sanctions under Fed. R.Civ.P. 11).[2]

The primary goal of sanctions is to deter misconduct. *Id.* (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). Therefore, the sanction imposed here should be the least severe sanction adequate to deter and punish plaintiff. *Id.* at 684.

■ In this case, defendants seek to strike plaintiff's supplemental expert disclosures, a sanction that would ultimately have the effect of excluding evidence beyond the scope of Drs. Burns and Grunberg's initial reports. The decision to exclude evidence is a drastic sanction. *In re Indep. Serv. Orgs. Antitrust Lit.*, 85 F.Supp.2d 1130, 1162 (D.Kan.2000) (citing *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997)). In determining whether excluding evidence is an appropriate sanction for failure to disclose, the court must consider: (1)

the prejudice or surprise to the party against whom the testimony is offered; (2) the ability to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness, if any. *Id.* (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.1999)).

■ Under this framework, the first factor the court must consider is the prejudice or surprise defendants will suffer by virtue of plaintiff's belated supplemental expert disclosures. This factor weighs in favor of defendants, although not heavily. As discussed above, defendants have been inconvenienced during the preparation of their motion for summary judgment by plaintiff's belated supplementations, and are hindered in their ability to effectively prepare to cross-examine Drs. Burns and Grunberg. However, the fact that defendants recently canceled depositions for these two experts suggests that defendants do not feel they have been extremely prejudiced by plaintiff's belated supplementations. Presumably, if the prejudice had been deemed extreme, defendants would have considered it imperative to conduct additional depositions of these experts.

The second factor the court must consider is its ability to cure this prejudice. This factor weighs in favor of plaintiff. In terms of defendants' ability to prepare for cross-examination, more than three months remain before trial for defendants to depose Drs. Burns and Grunberg and, to the extent leave of court is necessary for defendants to do so, the court hereby grants defendants leave to depose Drs. Burns and Grunberg. On the other hand, there is little that can be done at this late date to alleviate any inconvenience defendants suffered in preparing their motion for summary judgment.

The third factor weighs heavily in favor of plaintiff. At this early date, allowing Drs. Burns and Grunberg's testimony in accordance with plaintiff's supplemental disclo-

---

**2.** "While *White* involved sanctions under Rule 11, its principles apply equally to sanctions under Rules 26 and 37." *In re Indep. Serv. Orgs. Antitrust Lit.*, 85 F.Supp.2d 1130, 1162 n.2 (citing *Law v. National Collegiate Athletic Ass'n*, 167 F.R.D. 464, 478 n. 22 (D.Kan.1996); and *Parker v. Housing Auth. of Kan. City*, No. Civ. A. 89–2212–V, 1990 WL 126816, at *1 (D.Kan. Aug.16, 1990)).

sures should not even slightly disrupt a trial which is still more than three months away.

Finally, the fourth factor the court must consider is defendants' bad faith or willfulness, if any. Plaintiff has demonstrated no bad faith or willfulness on the part of defendants. Thus, this factor weighs in favor of defendants.

■ Upon due consideration and balancing of the four pertinent factors, the court finds that striking plaintiff's supplemental disclosures, which would have the effect of excluding evidence from Drs. Burns and Grunberg, is not warranted. Nevertheless, the court finds that plaintiff's counsel's conduct—including their blatant disregard of the spirit of the court's June 14, 2001–order, and their woefully dilatory conduct in failing to abide by the court's scheduling order that imposed a May 11, 2001–deadline for supplementing discovery—warrants sanctions under Fed. R.Civ.P. 16(f) and Fed.R.Civ.P. 37(c)(1). Both of these rules allow for the payment of reasonable expenses, including attorneys' fees, and the court is of the strong opinion that a monetary sanction would be appropriate to further the rationale and purposes to be served by sanctions. Hopefully, this monetary sanction will deter future similar conduct by plaintiff's counsel, punish them for blatantly disregarding the court's orders and acting in an unjustifiably dilatory manner, compensate defendants (who are the victims of the litigation abuse that is the subject of this motion), and encourage plaintiff's counsel to be mindful of the need to facilitate case management in the future. Simply stated,

having caused the problem now before the court, fairness and equity require that plaintiff's counsel be required to promptly pay to correct the problem.

Admittedly, defendants' counsel did not request, and plaintiff's counsel did not have an opportunity to brief, the precise issue of monetary sanctions. However, both had an adequate opportunity to be heard with regard to the issue of sanctions.[3] Furthermore, both were on notice that the court has the discretion to impose monetary sanctions "in lieu of" excluding evidence, Fed.R.Civ.P. 37(c)(1), and that the court has "wide discretion in fashioning a proper sanction" for failure to supplement, 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2050 & n. 11 (2d ed.1994).

Accordingly, plaintiff's counsel, without contribution or reimbursement by plaintiff, shall bear all reasonable expenses associated with defendants' present Rule 37(c)(1) motion, the memorandum in support, and reply brief, as follows. They shall be responsible for defense counsel's actual and reasonable hourly rates [4] for all time incurred in preparing and filing the motion and briefs. Furthermore, they shall bear the out-of-pocket costs, including copying, long-distance telephone, and mail or other delivery charges associated with preparing and filing these documents.

In addition, if defendants wish to take follow-up depositions of Drs. Burns and Grunberg, then defendants may renotice Drs. Burns and Grunberg for their second deposi-

---

3. Plaintiff's counsel knew that sanctions were being sought, had an opportunity to be heard after being confronted with the possibility of an even more egregious sanction (the striking of evidence from their client's case due to their misconduct), and yet the court determined that plaintiff's counsel's arguments were insufficient to show that sanctions were unwarranted. Plaintiff could do no better with another round of briefing because plaintiff's counsel should have already advanced their best arguments to protect their client's case. Furthermore, additional briefing from defendants would also be futile because the court has already determined that the sanction requested by defendants is unwarranted. From defendants' perspective, the monetary sanction awarded against plaintiff is better than the alternative, which is no sanction.

4. The court is mindful that a number of factors may impact the reasonable hourly rates in this case, such as the nature of the litigation and the fact that counsel for defendants may be located in other geographic locations where higher rates are considered reasonable. As always, the court strongly encourages the attorneys in this case to resolve the reasonableness of attorneys' fees without the court's intervention. However, if they should reach an impasse, they are ordered to submit briefs on this issue no later than fourteen days after payment is due from plaintiff's counsel, as described more specifically below. These briefs shall be limited solely to the issue of the reasonableness of attorneys' fees, and shall be supported by: (1) documentation regarding actual expenses; and (2) affidavits regarding the reasonableness of the attorneys' fees.

tions on or before November 30, 2001.[5] Defense counsel shall make good faith efforts to confine their interrogation to: (1) the updated reports which were recently produced; and (2) the additional documents upon which these reports are based. The court will rely on the good judgment and common sense of defense counsel not to replow ground which was covered earlier. In any event, these second depositions shall not exceed four hours each, exclusive of any breaks.

Plaintiff's counsel, without contribution or reimbursement by plaintiff, shall be responsible for any fees charged by Drs. Burns and Grunberg to prepare for and attend the second depositions. They shall also be responsible for defense counsel's actual and reasonable hourly rates for all time incurred in preparing for the depositions, for the time incurred by one attorney for each defendant to travel to and from the depositions, and to take the depositions. Furthermore, they shall bear the out-of-pocket costs associated with defense counsel's round trip coach airfare to San Diego, California and Washington, D.C., airport parking at defense counsel's cities of departure, taxi cab fare in San Diego and Washington, hotel charges for a one-night stay in San Diego,[6] and the court reporter's charges for the original transcript and one copy of the second deposition.

Finally, if the depositions reveal information that would support defendants' motion for summary judgment, and if defendants wish to include that information in their summary judgment reply brief, then plaintiff's counsel, without contribution or reimbursement by plaintiff, shall bear all reasonable expenses associated with the defendants' belated assertion of that information in their reply brief. They shall be responsible for defense counsel's actual and reasonable hourly rates for all time incurred in preparing that portion of the reply brief.

Defendants shall submit reasonable documentation of these expenses to plaintiff's counsel promptly. All of these expenses shall be paid by plaintiff's counsel within fifteen days thereafter. If these expenses are not paid timely, and if defendants file an appropriate motion, then the court may revisit the issue of whether the supplementations concerning Drs. Burns and Grunberg should be stricken.

The court also wishes to address defendants' argument that plaintiff may not, under the guise of a Rule 26(e) supplementation, have an expert render opinions fundamentally different from those addressed in a prior Rule 26(a)(2) disclosure. *See Schweizer v. DEKALB Swine Breeders, Inc.*, 954 F.Supp. 1495, 1510 (D.Kan.1997). Dr. Grunberg's supplemental report does not appear to be fundamentally different from his initial report. It is important to note that Dr. Grunberg's initial report was issued nearly six years ago in 1995, while his updated report was issued in August 2001. Dr. Grunberg's updated report literally updates his initial report without fundamentally changing it. For example, his updated report indicates he reviewed additional documents in August 2001 that "are consistent with the information that [he] provided in the November 27, 1995, Expert Report that the tobacco industry had access to the scientific literature that was available in the open literature and tobacco industry scientists were aware of the importance of nicotine in tobacco products," a statement which is, in fact, consistent with his initial report (doc. 454, Ex. N, pt.1, Expert Report Prepared by Neil E. Grunberg, Ph.D., Nov. 27, 1995, at 2). Furthermore, his

5. Defendants have indicated they believe it would not be particularly productive to conduct additional depositions of Drs. Burns and Grunberg. However, defendants' belief was undoubtedly made under the circumstances that ordinarily accompany the decision of whether to take a deposition. A party must typically weigh the cost associated with taking a deposition against the benefits that would likely be gained by doing so. In this case, the court will alleviate the overwhelming bulk of defendants' costs associated with these depositions so that defendants can decide whether to take additional depositions of Drs. Burns and Grunberg without regard to the cost of doing so. That way, defendants can hopefully decide whether to depose Drs. Burns and Grunberg based solely on the evidentiary benefits they perceive would likely be gained from taking those depositions.

6. With many nonstop flights available from most locations to Washington, D.C., there should be no need to incur hotel charges for Dr. Grunberg's deposition.

supplemental report indicates that his recent discussions with plaintiff were "consistent with his being an addicted smoker," another statement which also is, in fact, consistent with his initial report (*id.* at 4).

Similarly, Dr. Burns' supplemental report does not appear to be fundamentally different from his initial report. Dr. Burns' updated report literally updates his initial report in light of events that have largely become public knowledge during the interim six-year period. His initial report has not fundamentally changed. For example, Dr. Burns' initial report largely focused on plaintiff's peripheral vascular disease, but it also included two paragraphs on its last page indicating: (1) that tobacco companies were aware of studies which concluded that cigarette smoking causes diseases, including peripheral vascular disease; and (2) that tobacco companies had extensively investigated the role of nicotine in tobacco dependence. Dr. Burns' updated report is relatively consistent, although it expands on these remarks significantly by providing much more extensive detail regarding the tobacco companies' awareness of, and the actions they took based on their awareness of, the adverse side effects of smoking. While Dr. Burns' updated report contains significantly more detail concerning some of the subject matter mentioned in his initial report, that additional detail is by no means inconsistent with his earlier report. Perhaps most importantly, defendants have failed to direct the court's attention to any fundamental difference in which Dr. Burns' updated report attempts to remedy deficiencies in his initial report, which appears to be the critical factor that justified excluding the belated expert reports in *Schweizer*. Defendants have not convinced the court that Dr. Burns' updated report—although it expands on portions of his initial report by providing much more extensive detail on particular issues—is fundamentally different from his initial report in the sense that it attempts to remedy deficiencies, as was the case in *Schweizer*.

## IV. Order.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. Defendants' motion pursuant to Fed. R.Civ.P. 37(c)(1) (**doc. 453**) is granted in part and denied in part. Specifically, on the terms set forth above, the court awards monetary sanctions rather than striking plaintiff's supplemental expert disclosures.

2. The clerk shall mail copies of this order to all counsel of record.